# PAUL WARTZMAN ET AL. v. HIGHTOWER PRODUCTIONS, LTD.

[No. 587, September Term, 1982.]

*Decided February 7, 1983.*

The cause was argued before MOYLAN and GARRITY, JJ., and JAMES S. GETTY, Chief Judge of the Fourth Judicial Circuit, specially assigned.

*Mark D. Gately,* with whom were *James R. Eyler* and *Miles & Stockbridge* on the brief, for appellants.

*Leo Howard Lubow,* with whom were *Freishtat & Sandler* on the brief, for appellee.

GETTY, J., delivered the opinion of the Court.

Woody Hightower did not succeed in breaking the Guiness World Record for flagpole sitting; his failure to accomplish

this seemingly nebulous feat, however, did generate protracted litigation. We are concerned here with whether Judge Robert L. Karwacki, presiding in the Superior Court of Baltimore City, correctly permitted a jury to consider the issue of "reliance damages" sustained by the appellees. Additionally, we are requested by the appellees, as cross-appellants, to determine if the trial court's refusal to permit the jury to consider prejudgment interest is error.

Hightower Productions LTD. (appellees and cross-appellants) came into being in 1974 as a promotional venture conceived by Ira Adler, Frank Billitz and J. Daniel Quinn. The principals intended to employ a singer-entertainer who would live in a specially constructed mobile flagpole perch from April 1, 1975, until New Years Eve at which time he would descend in Times Square in New York before a nationwide television audience having established a new world record for flagpole sitting.

The young man selected to perform this feat was to be known as "Woody Hightower". The venture was to be publicized by radio and television exposure, by adopting a theme song and by having the uncrowned champion make appearances from his perch throughout the country at concerts, state fairs and shopping centers.

In November, 1974, the three principals approached Michael Kaminkow of the law firm of Wartzman, Rombro, Rudd and Omansky, P.A., for the specific purpose of incorporating their venture. Mr. Kaminkow, a trial attorney, referred them to his partner, Paul Wartzman.

The three principals met with Mr. Wartzman at his home and reviewed the promotional scheme with him. They indicated that they needed to sell stock to the public in order to raise the $250,000 necessary to finance the project. Shortly thereafter, the law firm prepared and filed the articles of incorporation and Hightower Productions Ltd. came into existence on November 6, 1974. The Articles of Incorporation authorized the issuance of one million shares of stock of the par value of 10¢ per share, or a total of $100,000.00.

Following incorporation, the three principals began developing the project. With an initial investment of $20,000, they opened a corporate account at Maryland National Bank and an office in the Pikesville Plaza Building. Then began the search for "Woody Hightower". After numerous interviews, twenty-three year old John Jordan emerged as "Woody Hightower".

After selecting the flagpole tenant, the corporation then sought and obtained a company to construct the premises to house him. This consisted of a seven foot wide perch that was to include a bed, toilet, water, refrigerator and heat. The accommodations were atop an hydraulic lift system mounted upon a flat bed tractor trailer.

Hightower employed two public relations specialists to coordinate press and public relations efforts and to obtain major corporate backers. "Woody" received a proclamation from the Mayor and City Council of Baltimore and after a press breakfast at the Hilton Hotel on "All Fools Day" ascended his home in the sky.

Within ten days, Hightower obtained a live appearance for "Woody" on the Mike Douglas Show, and a commitment for an appearance on the Wonderama television program. The principals anticipated a "snow-balling" effect from commercial enterprises as the project progressed with no substantial monetary commitments for approximately six months.

Hightower raised $43,000.00 by selling stock in the corporation. Within two weeks of "Woody's" ascension, another stockholders' meeting was scheduled, because the corporation was low on funds. At that time, Mr. Wartzman informed the principals that no further stock could be sold, because the corporation was "structured wrong", and it would be necessary to obtain the services of a securities attorney to correct the problem. Mr. Wartzman had acquired this information in a casual conversation with a friend who recommended that the corporation should consult with a securities specialist.

The problem was that the law firm had failed to prepare

an offering memorandum and failed to assure that the corporation had made the required disclosures to prospective investors in accordance with the provisions of the Maryland Securities Act Article 32A. (The Act was repealed and re-enacted in 1975 as C A Sec. 11-101 to 11-805). Mr. Wartzman advised Hightower that the cost of the specialist would be between $10,000.00 and $15,000.00. Hightower asked the firm to pay for the required services and the request was rejected.

Hightower then employed substitute counsel and scheduled a shareholders' meeting on April 28, 1975. At that meeting, the stockholders were advised that Hightower was not in compliance with the securities laws; that $43,000.00, the amount investors had paid for issued stock, had to be covered by the promoters and placed in escrow; that the fee of a securities specialist would be $10,000.00 to $15,000.00 and that the additional work would require between six and eight weeks. In the interim, additional stock could not be sold, nor could "Woody" be exhibited across state lines. Faced with these problems, the shareholders decided to discontinue the entire project.

On October 8, 1975, Hightower filed suit alleging breach of contract and negligence for the law firm's failure to have created a corporation authorized to raise the capital necessary to fund the venture. At the trial, Hightower introduced into evidence its obligations and expenditures incurred in reliance on the defendant law firm's creation of a corporation authorized to raise the $250,000.00, necessary to fund the project. The development costs incurred included corporate obligations amounting to $155,339 including: initial investments by Adler and Billitz, $20,000; shareholders, excluding the three promoters, $43,010; outstanding liabilities exclusive of salaries, $58,929; liability to talent consultants, $25,000; and accrued salaries to employees, $8,400.

Individual liabilities to the three promoters, Adler, Billitz and Quinn, totaled $88,608, including loans to the corporation, $44,692; repayment of corporate debt to

Maryland National Bank, $8,016; and loss of salaries, $36,000. The trial court disposed of the individual suit filed by the promoters, Adler, Billitz and Quinn and the cross complaint filed by the appellants. The only claim submitted for the jury's consideration was the claim of the corporation, Hightower, against the defendant law firm.

The jury returned a verdict in favor of Hightower in the amount of $170,508.43. Wartzman, Rombro, Rudd and Omansky, P.A., appealed to this Court. Hightower filed a cross appeal alleging that the jury should have been permitted to consider prejudgment interest.

The appellants raise four issues for our consideration:

1. The trial court erred in permitting Hightower to recover "reliance damages" or "development costs".

2. If "reliance damages" were recoverable, the trial court failed to properly instruct the jury on the law concerning their recovery.

3. The trial court erred in refusing to instruct the jury on the duty to mitigate damages.

4. The trial court erroneously permitted a member of the plaintiff's law firm to testify as a witness in the case.

### Reliance Damages

The appellants first contend that the jury verdict included all of Hightower's expenditures and obligations incurred during its existence resulting in the law firm being absolute surety for all costs incurred in a highly speculative venture. While they do not suggest the analogy, the appellants would no doubt equate the verdict as tantamount to holding the blacksmith liable for the value of the kingdom where the smith left out a nail in shoeing the king's horse, because of which the shoe was lost, the horse was lost, the king was lost and the kingdom was lost. Appellants contend that there is a lack of nexus or causation between the alleged failure of Mr. Wartzman to discharge his duties as an attorney and the loss claimed by Hightower. Stated differently, an unjust result will obtain where a person performing a collateral

service for a new venture will, upon failure to fully perform the service, be liable as full guarantor for all costs incurred by the enterprise.

Ordinarily, profits lost due to a breach of contract are recoverable. Where anticipated profits are too speculative to be determined, monies spent in part performance, in preparation for or in reliance on the contract are recoverable. 5 Corbin, *Contracts,* Sec. 1031, Restatement of Contracts, Sec. 333, cited with approval in *Dialist Co. v. Pulford,* 42 Md. App. 173 (1979).

In *Dialist, supra,* a distributor, Pulford, brought suit for breach of an exclusive contract that he had with Dialist. Pulford paid $2500.00 for the distributorship, terminated his employment with another company and expended funds in order to begin developing the area where the product was to be sold. When Pulford learned that another distributor was also given part of his territory he terminated his services.

This Court upheld the award of development costs to Pulford which included out of pocket expenses, telephone installation, office furniture, two months of forfeited salary and the value of medical insurance lost. The Court determined that the expenditures were not in preparation for or part performance of a contract, but in reliance upon it. "Such expenditures are not brought about by reason of the breach. They are induced by reliance on the contract itself and rendered worthless by its breach." *Id.* at 181.

Recovery based upon reliance interest is not without limitation. If it can be shown that full performance would have resulted in a net loss, the plaintiff cannot escape the consequences of a bad bargain by falling back on his reliance interest. Where the breach has prevented an anticipated gain and made proof of loss difficult to ascertain, the injured party has a right to damages based upon his reliance interest, including expenditures made in preparation for performance, or in performance, less any loss that the party in breach can prove with reasonable certainty the injured party would have suffered had the contract been performed. *Restatement,* Second, Contracts, Sec. 349, *Holt v. United*

*Security Life Ins. & Trust Co.,* 72 Atl. 301 (N.J.) (1909), *In Re Yeager Company,* 227 Fed. Supp. 92 (N.D. Ohio, E.D. 1963).

The appellants' contention that permitting the jury to consider reliance damages in this case rendered the appellants' insurers of the venture is without merit. Section 349 of the Restatement, cited above, expressly authorizes the breaching party to prove any loss that the injured party would have suffered had the contract been performed. Such proof would avoid making the breaching party a guarantor of the success of the venture.

As Judge Learned Hand stated in *Albert & Son v. Armstrong Rubber Company,* 178 F. 2d 182, (2d Cir. 1949),

"It is often very hard to learn what the value of the performance would have been; and it is a common expedient, and a just one, in such situations to put the peril of the answer upon that party who by his wrong has made the issue relevant to the rights of the other. On principle therefore the proper solution would seem to be that the promisee may recover his outlay in preparation for the performance, subject to the privilege of the promisor to reduce it by as much as he can show that the promisee would have lost if the contract had been performed."

In the present case the appellants knew, or should have known, that the success of the venture rested upon the ability of Hightower to sell stock and secure advertising as public interest in the adventure accelerated. Appellants' contention that their failure to properly incorporate Hightower was collateral and lacked the necessary nexus to permit consideration of reliance damages is not persuasive. The very life blood of the project depended on the corporation's ability to sell stock to fund the promotion. This is the reason for the employment of the appellants. In reliance thereon, Hightower sold stock and incurred substantial obligations. When it could no longer sell its stock, the entire project failed. No greater nexus need be established. Aside from questioning the expertise of the

promoters based upon their previous employment, the appellants were unable to establish that the stunt was doomed to fail. The inability to establish that financial chaos was inevitable does not make the appellants insurers and does not preclude Hightower from recovering reliance damages. The issue was properly submitted to the jury.

Appellants contend that the appellees should be limited to the recovery of damages under traditional contract and negligence concepts, citing *Meyerberg, Sawyer and Rue v. Agee,* 51 Md. App. 711, (1982).

*Meyerberg, supra,* involved a breach of contract action for certification of a title that was not marketable. The trial judge permitted the jury, in assessing damages, to consider:

1. Economic loss occasioned by increased costs of construction and financing.
2. Attorneys' fees expended to establish access to the property.
3. Capital gains taxes paid for failure to purchase another property within the time limitations prescribed by law.
4. The amount of earned hazard insurance premium the appellees were required to purchase.

In affirming the decision of the trial court, this Court acknowledged that a contracting party is expected to take account of only those risks that are foreseeable at the time he makes the contract and is not liable in the event of breach for loss that he did not at the time of contracting have reason to foresee as a probable result of such a breach. This limitation is set forth in Restatement, *Contracts,* (2d), Sec. 351.

In *Meyerberg,* we noted that exceptional perception is not relevant to the test of foreseeability when applied to an attorney who is relied upon by a layman to protect his investment from pitfalls which are not readily apparent to those in foreign fields of endeavor.

Relying on *Cochrane v. Little,* 71 Md. 323, (1889) we further stated:

> "A client who has employed an attorney has a right to his diligence, his knowledge and his skill; and whether he had not so much of these qualities as he was bound to have, or having them, neglected to employ them, the law properly makes him liable for the loss that has accrued to his employer."

We find little solace for the appellants' cause in the cases cited above.

The appellants are aggrieved by the amount of the verdict which they consider to be excessive. According to the docket entries, the appellants did not seek any modification of the verdict. It is difficult and arduous for this court to determine precisely the various costs that were presented for the jury's consideration. Jury arguments were not transcribed and the court apparently gave limiting instructions and permitted counsel to argue specific development cost items. After reviewing nine hundred and seventy-five pages of testimony and a maze of exhibits, we note that in answer to interrogatories filed in October, 1981, corporate damages were stated to be $155,339.00. This figure included shareholders investments and accrued salaries amounting to $51,410. The court's instructions precluded inclusion of these items as recoverable damages. It would appear, therefore, that the verdict may well have exceeded the guidelines set forth by the trial court. That issue is not before us, however, except that the appellants contend generally that reliance damages are improper in this case.

### Instructions on Reliance Damages

Appellants' primary exception to the court's damage instruction relates to the failure to include suggested instruction 23b which states:

> "You are instructed that you may not award any damages for unpaid expense of Hightower unless

you find that these expenses were incurred by Hightower in justifiable reliance on the defendant's causing Hightower to comply with the securities laws. If you find that the expenses were not incurred in reliance on the defendant's performance, or if such reliance was not justified, then you may not award unpaid expenses as damages."

The Court instructed the jury that in order to find liability that the plaintiff must prove three things:

"First, the employment of the defendants in behalf of the Plaintiff and the extent of the duties for which the Defendants were employed; secondly, that the Defendants neglected the duties undertaken in the employment and, thirdly, that such negligence resulted in and was the proximate cause of loss by the Plaintiff, that is that the Plaintiff was deprived of any right or parted with anything of value in reliance upon the negligence of the Defendants."

The instruction given fairly apprised the jury of the Plaintiffs' burden and adequately covered the reliance damage concept. Additionally, the court instructed the jury that they could not consider unpaid salaries due its officers or employees or amounts invested by stockholders as recoverable damages.

Appellants further object to the court's refusal to grant its suggested instructions 23C and D designed to forbid recovery if the jury found that Hightower would not have been able to secure funds to remain in business regardless of the defendants' breach. The instruction was properly refused. The very nature of reliance damages is that future gain cannot be measured with any reasonable degree of reliability. Had Hightower been able to show lost profits the theory of their right to recover may not have been development costs in reliance on the contract but loss based upon expectation interest instead. Appellants had the

opportunity to minimize the recovery by showing that the venture could not succeed. This was difficult, but their failure to do so does not entitle them to an instruction that requires the jury to speculate on the ultimate success of the venture. We find no error in the instructions given by Judge Karwacki.

## Duty to Mitigate Damages

Appellants further except to the trial court's refusal to grant any instruction on the issue of Hightower's obligation to mitigate its damages. The instruction offered by appellants is a correct statement of the law. Correctness alone, however, is insufficient to require the court to grant the prayer; there must be evidence to support the proposition to which it relates. *Dorough v. Lockman,* 224 Md. 168, (1961).

The evidence in this case establishes that Hightower did not have the $43,000.00 to place in escrow covering stock sold, did not have the $10,000.00 or $15,000.00 to employ a securities specialist and could not continue stock sales or exhibitions to obtain the necessary funds. Mr. Wartzman's offer to set up an appointment for Hightower with an expert in security transactions at Hightower's expense can hardly be construed as a mitigating device that Hightower was obligated to accept. The party who is in default may not mitigate his damages by showing that the other party could have reduced those damages by expending large amounts of money or incurring substantial obligations. *Myerberg, supra.* Since such risks arose because of the breach, they are to be borne by the defaulting party. 22 Am. Jur. 2d, *Damages,* Sec. 37, *Griffin v. Bredouw,* (Okla.), 420 Pac. 2d 546, (1966).

The doctrine of avoidable consequences, moreover, does not apply where both parties have an equal opportunity to mitigate damages. Appellants had the same opportunity to employ and pay a securities specialist as they contend Hightower should have done. They refused. Having rejected Hightower's request to assume the costs of an additional

attorney, they are estopped from asserting a failure by Hightower to reduce its loss. See D. Dobbs, *Remedies,* Sec. 37, (1973), 11 Williston, *Contracts* Sec. 1353, (1979).

There is no evidence in this case that the additional funds necessary to continue the operation pending a restructuring of the corporation were within the financial capabilities of Hightower. The Court properly declined to instruct the jury on the issue of mitigation.

## Disqualification of Counsel

Appellants' final contention relates to its motion to disqualify David Freishtat, a member of the firm representing Hightower, from acting as counsel in this case. The litigation was ongoing for more than four years before the motion was made which may well have caused additional delay and hardship if granted.

The basis of the motion was that the appellants intended to call Mr. Freishtat as a witness in a counter claim filed against the promoters of Hightower and this would prejudice the plaintiffs' case.[1] Appellants now contend that Mr. Freishtat's testimony in the principal case, prejudiced the appellants. One cannot espouse one theory at trial and then resort to another alternative on appeal. Neither rule is applicable to the facts herein. Disciplinary Rule 5-101 permits a lawyer to testify:

> "(4) As to any matter, if refusal would work a substantial hardship on the client, because of the distinctive value of the lawyer or his firm as counsel in the particular case."

Denial of appellants' motion to disqualify rested in the sound discretion of the court and we discern no error.

## Prejudgment Interest

Hightower, in its cross-appeal, alleges that the issue of pre-judgment interest should have been presented to the jury for its consideration. Applicable Maryland law provides

---

[1]. Mr. Freishtat was a witness, but not trial counsel in this litigation.

that where a claim is for unliquidated damages, interest may run from the date of the judgment, but not before. *Affiliated Distillers,* 213 Md. 509, (1957), *Taylor v. Wahby,* 271 Md. 101, (1974).

The reliance damages sought in this case are not subject to pre-judgment valuation. "Reasonable and justified" damages incurred by reason of Mr. Wartzman's representation of Hightower were not reasonably ascertainable until the jury rendered its verdict. Refusal to permit the jury to consider prejudgment interest, therefore, was not an abuse of discretion.

In conclusion, the final comment of Judge Lowe in *Myerberg, supra,* is equally apposite here.

"The unfortunate oversight on which this case was based was a costly one, but it was made by one who was hired precisely for the purpose of averting the consequent losses. It is he, and his firm, who must bear them."

*Judgment affirmed.*
*Costs assessed to appellants.*