[No. 5796-8-III. Division Three. January 31, 1985.]

HERSCHEL H. SPARKS, ET AL, *Appellants,* v. DOUGLAS COUNTY, ET AL, *Respondents.*

---

*Lowell D. Sperline* and *Sperline & Lacy, Inc., P.S.,* for appellants.

*Judith L. McCauley, Prosecuting Attorney,* for respondents.

McINTURFF, J.—Mr. and Mrs. Sparks appeal from a judgment for $6,365.33 against Douglas County for the destruction of seven fruit–bearing trees in their orchard. They contend the judgment sum must be trebled under RCW 64.12.030. We reverse in part and remand for trebling of damages.

In the spring of 1950, Mr. Sparks was contacted regarding a request by Douglas County to extend Columbia Drive, now Empire Way, through his property. Mr. Sparks agreed to remove one row of fruit trees, which would become the center of the road, and to grant the County a right of way which would extend to the next row of trees on either side, approximately 40 feet in width. Mr. Sparks and his wife then signed a legal document entitled Right of Way Deed granting to Douglas County

> a strip of land 40 feet wide, being 20 feet on each side of line of said road as surveyed in the SW ¼ of the NE ¼ & SE ¼ of the NE ¼ of Section 27, Township 23 North, Range 20 E.W.M.

The road was established and maintained without incident until 1979–80 when a problem developed regarding the fruit trees which blocked the view of the intersection of Empire Way and 32 N.W. In an effort to placate the County, Mr. Sparks removed some limbs but the county engineer was not satisfied. Mr. Sparks was warned that if the trees were not cut back sufficiently, the County would remove them. The County then ran a survey line, using a monument disputed by the experts, and from that line claimed trees within 20 feet east as being on the right of way.

On April 21, 1980, the county road department proceeded to cut down five of Mr. Sparks' bearing apple trees. A claim was filed for damages of $6,675 on May 7, 1980, which was

denied; this action followed.

While the action was pending, the County returned to the Sparks property in January 1981 and cut more bearing apple trees. The trial court found a total of 12 trees were removed, 7 of which were not within the County's right of way. The court granted Mr. Sparks damages for $6,365.33 but did not allow treble damages as it found the County "had a deed which indicated to them that the trees were on Douglas County right of way."

The first issue raised by Mr. and Mrs. Sparks concerns the lateral extent of the right of way granted to Douglas County.

The court determined the legal description contained in the 1950 deed was insufficient and that decision is supported by the evidence. Frederick Skinner, engineer and land surveyor, testified he was unable to locate the road or its direction from information contained on the face of the deed.

■ Deeds must contain an adequate legal description of the real property to be conveyed. *In re Estate of Verbeek,* 2 Wn. App. 144, 156, 467 P.2d 178 (1970). An inadequate legal description is a violation of the statute of frauds. *In re Estate of Verbeek,* at 157 (citing *Bigelow v. Mood,* 56 Wn.2d 340, 353 P.2d 429 (1960)). No reference was made to a specific survey and there was evidence a surveyor could not locate the property, given the description contained in the deed. The cases cited by the County are not dispositive as they hold specific reference to the second document must be made within the deed.

The court concluded the County had a prescriptive right, not only to the roadway as blacktopped, but to the full 40-foot right of way the parties had arguably intended as evidenced by the written documents of the road establishment procedure.

The question of the extent of the easement acquired, *i.e.,* whether it included the road banks as well as the blacktopped area, is answered in *Yakima Vly. Canal Co. v. Walker,* 76 Wn.2d 90, 455 P.2d 372 (1969). The facts are

similar, the only difference being the establishment of a canal and its banks as opposed to a highway. The question before the trial court there was the same as here: what was the lateral extent of the easement? There, in 1894, Ada Wilson conveyed a one–half interest in real property to the canal company which included a right of way to the extent of 50 feet from the center line of the canal as surveyed. The other one–half interest was never conveyed. In 1965, the defendants acquired the one–half interest not conveyed and constructed a house, fence and patio which the court later determined encroached on the canal's right of way.

The court stated at page 93:

It is abundantly apparent that plaintiff claims its 50–foot easement on both sides of the canal center line *under color of title.* Even though the conveyance be defective or void, the true owner will be deemed disseized to the extent of the boundaries stated in the conveyance by the adverse claimant's possession of a part of the premises.

The rule is well stated in 3 Am. Jur. 2d *Adverse Possession* § 27, at 109:

It is the general rule that where property is held under color of title possession of the entire property is not required for purposes of adverse possession. Correlatively, it is a well–settled general rule that one who enters upon land under color of title, such as a deed, and possesses only a part of the land, will be deemed to have possession of the entire tract to the limits of the boundaries described in the color of title for purposes of adverse possession, . . . The constructive seisin in deed is the equivalent of actual seisin.

The court then concluded the surveillance of the canal banks was critical to the structural support of the canal and prevention of extensive flooding. By constructing the fence the defendants had made such an inspection impossible. The court then granted an injunction directing defendants to remove their improvements.

The same principles apply to the case at bench. The County has a prescriptive right under color of title to a 40–foot right of way even though it has never exercised owner-

ship of the road banks until recently. The unobstructed view down Empire Way is necessary for the prevention of traffic accidents at the intersection of Empire Way and 32 N.W. Hence, we affirm the 40–foot right of way.

The second issue raised by Mr. Sparks concerns the measure of damages to be awarded for the seven trees cut which were outside the County's right of way. The trial court set the value of the trees at $6,365.33, based on the loss of production formula announced in *Penney Farms, Inc. v. Heffron,* 24 Wn. App. 150, 599 P.2d 536 (1979). The question to be determined is whether those damages should be trebled in light of RCW 64.12.030[1] and RCW 64.12.040.[2] In *Hirt v. Entus,* 37 Wn.2d 418, 430, 224 P.2d 620 (1950), our court stated the following general rule:

> "Where a person has knowledge of a bona fide boundary dispute, and thereafter consciously, deliberately, and intentionally enters upon the disputed area for the purpose of destroying, and does destroy, trees or other property which cannot be replaced, such acts are neither casual nor involuntary, nor can they be justified upon the basis of probable cause for belief by the tort feasor that he owned the land, but, on the contrary, are without lawful authority and will subject such person to treble damages as provided by statute."

(quoting *Mullally v. Parks,* 29 Wn.2d 899, 190 P.2d 107 (1948)).

There is evidence that the County cut seven trees in the spring of 1981 despite the fact a lawsuit was pending

---

[1]RCW 64.12.030 provides:

"Whenever any person shall cut down, . . . any tree, . . . on the land of another person, . . . without lawful authority, in an action by such person . . . against the person committing such trespasses . . . if judgment be given for the plaintiff, it shall be given for treble the amount of damages claimed or assessed therefor, as the case may be."

[2]RCW 64.12.040 provides:

"If upon trial of such action it shall appear that the trespass was casual or involuntary, or that the defendant had probable cause to believe that the land on which such trespass was committed was his own, . . . judgment shall only be given for single damages."

against the County in which Mr. Sparks claimed ownership of the land in question. Under the rule announced in *Hirt,* the County had sufficient notice of a boundary dispute and chose to continue with the destruction of the trees. We conclude, under these circumstances, the County's trespass was not within the parameters of RCW 64.12.040 so as to allow the court a statutory rationale for denying treble damages. The trial court's finding of good faith, as to these trees, is not supported by substantial evidence.

However, we raise another issue, sua sponte, regarding the application of treble damages where the value of the tree is based on its production, rather than stumpage value. Counsel has responded to this issue.

*Penney Farms,* at 151–52, provides the following insights with respect to setting damages for loss of fruit trees:

> The purpose underlying tort damages is succinctly set forth in C. McCormick, *Law of Damages* § 137 (1935):
> The primary aim in measuring damages is compensation[.] . . . [T]his contemplates that the damages for a tort should place the injured person as nearly as possible in the condition he would have occupied if the wrong had not occurred[.]

The court then established the measure of damage of a fruit tree as being the lost production value while replacement trees were maturing less the cost of production. The court was not faced with the issue of intentional destruction and the possible trebling of those damages based on production value.

In *Pearce v. G.R. Kirk Co.,* 92 Wn.2d 869, 873–74, 602 P.2d 357 (1979), the court considered arguments advanced by a landowner who sought treble damages for the intentional cutting and removing of Christmas trees from her land. The court stated:

> It was proved to the satisfaction of the trial court here, and the defendant does not question that proof, that the plaintiff planned, with the help of her father, to cut these Christmas trees and sell them at retail. . . . it is apparent that to award her only the stumpage value would be to deny full compensation for her loss.

The court then affirmed the award of treble the amount the plaintiff would have realized had she been allowed to market her trees as Christmas trees, less the cost of transportation to market and the costs of sale.

In *Lawson v. Helmich,* 20 Wn.2d 167, 181, 146 P.2d 537 (1944), an action was brought under the statute for the intentional destruction of apple trees. The court trebled the damages of $500 which were based on the difference in the value of the property before and after the trees were cut, rather than the stumpage value of the trees.

 The language of the statute is mandatory

> Whenever any person shall cut down, . . . any tree . . . if judgment be given for the plaintiff, it *shall* be given for treble the amount of damages claimed or assessed therefor, as the case may be.

(Italics ours.) RCW 64.12.030. The only time damages are mitigated is under RCW 64.12.040, which we have found does not apply in this case. To not assess treble damages would eliminate the clear statutory distinction between negligent and intentional destruction of growing fruit trees. Such an interpretation would render the statute meaningless; statutes must be construed so as to be effective. *Avlonitis v. Seattle Dist. Court,* 97 Wn.2d 131, 138, 641 P.2d 169, 646 P.2d 128 (1982).

The purpose of the treble damages statute is outlined in *Henriksen v. Lyons,* 33 Wn. App. 123, 125, 652 P.2d 18 (1982):

> Although the award of treble damages conflicts with the more general policy against punitive damages, it is thought to be justified in this context because (1) it discourages the practice of private eminent domain; (2) it provides a rough estimate of future damages, especially for premature harvesting of trees; and (3) it punishes the voluntary trespasser.

Based on the damage formula announced in *Penney Farms,* the court arrived at the proper measure of damages; it erred when it declined to treble those damages because of its finding the County acted in good faith. We, therefore,

remand for a trebling of the amount found by the court.

The first issue raised by the County in its cross appeal concerning the sufficiency of the legal description has been answered. The County's argument regarding the doctrine of "estoppel by deed" is a moot issue because the court has determined the County is entitled to all of the land described by right of prescriptive easement under color of title.

The County next argues the court was in error when it established the center line 5 to 6 feet west of the original monument. The County cites *Erickson v. Wick,* 22 Wn. App. 433, 437–38, 591 P.2d 804 (1979) and *Staaf v. Bilder,* 68 Wn.2d 800, 415 P.2d 650 (1966) in support of the rule that the intent of a new survey is to reestablish the boundary lines as determined by the original surveyors rather than where modern surveys would place them. A review of the testimony provided by the County's expert Mr. Rotter and by Mr. Sparks' expert, Mr. Skinner, indicates disagreement as to the validity of the monuments used to begin the survey and the fact there may have been a discrepancy in the deflection angle of 7 or 8 minutes in the survey done by Mr. Rotter. A determination of the center line of the road is a factual determination to be made by the trial court. The judge had an opportunity to view the site as well as all the center lines determined by the different surveys. He determined the line drawn by Western Pacific Engineering was the most accurate.

An appellate court will not retry factual issues of a case but will only review the record to determine if the findings are supported by substantial evidence. *In re Marriage of Smith,* 100 Wn.2d 319, 324, 669 P.2d 448 (1983); *Thorndike v. Hesperian Orchards, Inc.,* 54 Wn.2d 570, 343 P.2d 183 (1959). The testimony relating to the line drawn by Western Pacific Engineering is substantial evidence to support the court's finding.

The case is remanded to the Superior Court for trebling of the damage award of $6,365.33.

GREEN, C.J., and MUNSON, J., concur.