**Phong NGUYEN, et al., Appellants,**

v.

**CONTROL DATA CORPORATION, Respondent.**

**No. C3–86–1446.**

Court of Appeals of Minnesota.

Feb. 24, 1987.

---

Galen E. Watje, Minneapolis, for appellants.

Edwin R. Holmes, Minneapolis, for respondent.

Heard, considered and decided by CRIPPEN, P.J., and LANSING and NIERENGARTEN, JJ.

## OPINION

LANSING, Judge.

This appeal arises from the denial of appellants' motion for a new trial after the trial court entered a directed verdict in favor of Control Data Corporation; we affirm the trial court's holding that there is insufficient evidence to warrant a jury determination on appellants' claims.

## FACTS

In September 1979 Phong Nguyen, an employee at Magnetic Peripherals, a subsidiary of Control Data Corporation (CDC), received a CDC publication describing the Employee Entrepreneurial Advisory Office. The program was designed to assist CDC employees in starting their own businesses and, in conjunction with CDC's Business and Technology Center (Center), provide general advisory services in business planning, technology, marketing and financing. Nguyen earned his B.A. in business administration with a major in production management from Southwest State University in Marshall, Minnesota, and was interested in owning his own data entry business.

Nguyen broached the idea of starting a business to two other employees, Dean Akins and Richard McDowell. They expressed interest and Nguyen approached CDC with questions about financing. CDC sponsored programs designed to provide funds for minority-owned businesses. According to Nguyen, CDC told him that because his company would be a minority-owned business, he would be assured of the necessary financing and would receive substantial business through its affirmative action programs. CDC said Nguyen and his partners could start the business with $10,000 equity capital, which would serve as security for a $50,000 small business loan.

About November 1, 1979, CDC helped Nguyen prepare a $50,000 loan request for a data entry business to be known as Sigma Data, Inc. (SDI). Nguyen believed that the loan did not require a personal guarantee. After the loan application had been submitted, CDC officials assured Nguyen several times that approval of the loan would "not be a problem," that it was "taken care of" and that it would "just be a matter of time." Nguyen notified the Center that he intended to lease space there when SDI's financing was approved. CDC remodeled an office at the Center to meet SDI's needs. Although financing had not been approved, SDI moved into the space on December 15, 1979. Nguyen, based on a belief that the financing was "taken care of," signed a one-year lease for the space on January 11, 1980.

After he signed the lease for office space, Nguyen continued at his job with CDC and worked on SDI business in his spare time. In the middle of February Nguyen learned that CDC was involved in a large project and wanted SDI to handle its keypunching needs. CDC awarded SDI the project because of its status as a minority-owned business and because it was located in the Center. In order to prepare for the project, Nguyen quit his job at CDC on February 21, 1980, and hired eight to ten people to do keypunching.

CDC refused Nguyen's $50,000 loan application in March 1980. Nguyen received no clear explanation for the decision and contacted the CDC officials who had promised the funds would be available. They referred him to another financial institution, Summit Bank, and he submitted an application for a $30,000 Small Business Administration loan. Because the loan approval process would take time, Nguyen applied for and received a short-term loan for $6,000 from Summit Bank. Richard McDowell also loaned SDI $5,000 to help with operating costs until long-term financing could be approved. Nguyen and Akins personally guaranteed each loan. Despite

the difficulty in obtaining financing, Nguyen expanded SDI's office space.

Nguyen also asked CDC to assist in leasing a computer for SDI. They discussed three options for financing a computer, but did not agree on an option. One of the options involved CDC guaranteeing or providing a deposit for a *12*–month lease. Nguyen signed a *60*–month computer lease on December 14, 1979. The computer dealer contacted CDC about the financing arrangement, and CDC's representative sent a letter on December 26, 1979, informing all parties, including Nguyen, that he had been directed to lease the computer on CDC's behalf and that he could negotiate only for a 12–month contract with a purchase conversion clause. Apparently, both Nguyen and the computer dealer believed CDC would still provide a letter of credit for 12 months on a 60–month lease, and the dealer shipped the computer on December 31, 1979, without requiring a security deposit. When CDC would not supply a letter of credit under the changed terms, the computer dealer put a hold on all remaining shipments to SDI. In April 1980 the computer dealer threatened to repossess SDI's computer unless they received a security deposit. Nguyen and Akins took out another loan, for $8,000, and paid the deposit.

In November 1980 SDI received a $35,000 loan from Commercial Credit Financial Corporation, a wholly owned CDC subsidiary. Nguyen mortgaged his home as collateral. The loan proceeds were primarily used to pay off prior loans, but $12,000 was used to pay for a separate computer system which Nguyen had ordered in September or October 1980 over Akins' objection. The computer was useless to SDI's business, and Nguyen purchased it with the intent of distributing the computer products as an extra source of income. His plans did not materialize and SDI never used the computer.

By the end of 1980, SDI was unable to make lease payments at the Center. CDC allowed SDI to remain and allowed Nguyen to negotiate a new lease conditioned on paying the arrearages. Nguyen paid the past-due rent with a check on SDI's ac-

count and renewed the lease on April 21, 1981. Nguyen then stopped payment on the check.

In the summer of 1981 the Internal Revenue Service confiscated SDI's checkbook because Nguyen had not paid payroll taxes since the fall of 1980. The business failed in August 1981.

Nguyen and Akins sued CDC on April 20, 1983, for negligence, breach of contract, breach of fiduciary responsibility, and misrepresentation. They sought damages for loss of equity capital, loan guarantees, IRS claims, lost time and wages, and also requested punitive damages.

At trial, at the close of plaintiffs' case, counsel for CDC moved for a directed verdict. The trial court found that although there were genuine issues of disputed fact on CDC's liability, Nguyen and Akins had failed to provide prima facie proof of causation between CDC's conduct and SDI's failure.

### ISSUE

Did appellants present sufficient evidence at trial, under any of the alleged legal theories, to withstand a directed verdict?

### ANALYSIS

The trial court granted CDC's motion for a directed verdict based on its finding that Nguyen and Akins failed to show that their damages were caused by CDC's actions. On review, taking the facts in the light most favorable to the parties opposing the motion, we evaluate whether, as a matter of law, the evidence was insufficient to present a fact question for the jury to decide. *Peterson v. Little-Giant Glencoe Portable Elevator,* 366 N.W.2d 111, 115 (Minn.1985).

#### *Negligence*

Nguyen and Akins claim that CDC negligently advised them that $10,000 was sufficient equity capital to secure adequate long-term financing for SDI. As a result of this alleged negligence, Nguyen and Akins seek to recover their lost equity capi-

tal, their loan guarantees, the IRS claims, their lost time and wages, and punitive damages.

■ Assuming, for the purpose of this analysis, that CDC had a duty to provide reasonable advice and that this duty was breached,[1] Nguyen and Akins must introduce evidence which provides a reasonable basis for the conclusion that it is more likely than not that CDC's conduct caused the resulting damages. A mere possibility of causation is not enough. *Zinnel v. Berghuis Construction Co.,* 274 N.W.2d 495 (Minn.1979). "[When] the probabilities are at best evenly balanced, it becomes the duty of the court to direct a verdict for the defendant;" W.P. Keeton, D. Dobbs, R. Keeton & D. Owen, *Prosser & Keeton on The Law of Torts,* § 41, p. 269 (5th ed. 1984).

■ The trial court reasoned that the losses occurred because SDI failed and Nguyen and Akins had to show that CDC's negligent advice resulted in SDI's failure. Neither Nguyen nor Akins could give competent testimony as to why the business failed. Nguyen had insufficient business background to qualify as an expert, and Akins lacked foundation to give an opinion because he knew nothing about SDI's books and records. *See* Minn.R.Evid. 702, 703. There was no competent evidence to show CDC's negligence caused the losses.

The evidence suggests the business failed due to mismanagement. Nguyen had no practical business experience. McDowell, the key person who was to program the computers for each job, never came to work for SDI and Nguyen had sole responsibility for running the business. Nguyen purchased additional computer equipment and expanded the office space when the business was without funds. When SDI finally received a substantial business loan, Nguyen spent a large portion of the money on a computer system

unrelated to SDI's operation. Nguyen failed to keep adequate business records and failed to pay taxes.

The evidence is at least equally strong that SDI failed due to mismanagement rather than CDC's negligence. *See Zinnel,* 274 N.W.2d at 499. The trial court properly entered a directed verdict on the negligence issue.

### Contract

Nguyen and Akins allege that CDC agreed to provide financing, guarantee a one-year computer lease, and provide SDI with substantial business.

The trial court concluded generally that Nguyen and Akins presented sufficient evidence to raise a jury question on whether CDC failed to fulfill its promises, but directed a verdict for CDC on the contract claim because there was no proof that SDI failed as a result of CDC's unfulfilled promises.

■ The record supports the trial court's finding that Nguyen and Akins presented evidence to raise a jury issue on the promise of financing. Although CDC eventually assisted them in obtaining approximately $50,000 in financing, it was not obtained at the outset. Nguyen and Akins allege the delay in obtaining the money caused damages.[2] The proof required to support contract damages is similar to that of tort: the damages must result from (or be caused by) the breach. Consequently, Nguyen and Akins face the same problems of proof they encountered in their tort action. They have failed to prove that the damages resulted from CDC's failure to provide the financing at a specific time.

Nguyen and Akins argue that because they seek reliance damages rather than expectancy damages, the trial court's reasoning on causation does not apply. We do not agree. Reliance damages are a reim-

1. *See, e.g., City of Eveleth v. Ruble,* 302 Minn. 249, 225 N.W.2d 521 (1974); *Gammel v. Ernst and Ernst,* 245 Minn. 249, 72 N.W.2d 364 (1955).

2. On appeal Nguyen and Akins claim CDC promised to arrange *non-recourse* financing. This claim is not included in the complaint or in

the trial memorandum. Although Nguyen stated in his testimony at trial that CDC never told him he would have to personally guarantee the loan, he did not testify that CDC agreed to provide $50,000 in non-recourse financing.

bursement for "loss *caused* by reliance on the contract * * *." *Restatement (Second) of Contracts* § 344(b) (1981) (emphasis added). Even if Nguyen and Akins acted in reliance on CDC's promise of financing and this reliance was justified, they must still show that their damages were caused because they did not get the relied-on financing. This is the element they failed to prove.[3]

The remaining contract claims, the breach of the agreement to guarantee a one-year computer lease and failure to provide SDI with substantial business, are similarly affected by the failure to show that either breach resulted in the claimed damages. However, apart from damages, the facts are insufficient to support a breach-of-contract action on either of these claims.

■ At trial Nguyen claimed that CDC agreed to guarantee SDI's first 12 months' computer lease payments. Although this was still in the discussion stage, Nguyen signed a *60*-month computer lease. CDC informed Nguyen and the computer dealer that CDC would negotiate for only a *12*-month contract with a purchase conversion clause. CDC's actions in refusing to guarantee a contract different from their agreement is not a breach of contract.

■ Similarly, CDC's promise to supply SDI with business was not breached. CDC promised to supply SDI with business initially, but said that SDI must develop its own clientele to survive. Nguyen admitted at trial that CDC did not guarantee SDI a fixed amount of business, but Nguyen understood the business would be "substantial." CDC provided SDI with approximately $40,000 of business. Throughout SDI's operation, CDC was its main customer.

The trial court properly directed a verdict on the contract claims.

*Misrepresentation*

■ Nguyen and Akins allege CDC's agents made statements about business advantages for a minority-owned business, statements about financing, and statements about the lease of the computer that are actionable misrepresentations.

The record is unclear on which specific statements form the basis for the misrepresentation claim. In any event, the evidence is insufficient to survive a motion for a directed verdict. We have previously discussed the deficiencies of proof on the financing and the computer lease. The record is also clear that SDI received business because of its status as a minority-owned company.

The test for misrepresentation, well-settled in Minnesota, places the burden of proof upon those claiming to be misled to show that the statements proximately caused their losses. *See Davis v. Re-Trac Manufacturing Corporation*, 276 Minn. 116, 117, 149 N.W.2d 37, 38–39 (1967). Nguyen and Akins have failed to establish the same element of proximate causation that defeated their other claims for damages.

*Fiduciary Relationship*

■ We find no merit in the final claim that CDC breached a fiduciary obligation. Nguyen and Akins knew at all times that the Entrepreneurial Advisory Office employees worked for CDC. Moreover, nothing in the record suggests CDC took advantage of appellants' trust or benefitted unjustly at appellants' expense. *See Kennedy v. Flo-Tronics, Inc.*, 274 Minn. 327, 331, 143 N.W.2d 827, 830 (1966) (a fiduciary relationship is not created when plaintiffs should have known defendants represented adverse interests). CDC provided substantial resources and financial and legal advice to SDI. CDC designed SDI's office and provided one month's free rent. When SDI

---

3. Nguyen and Akins cite *Wartzman v. Hightower Productions, Ltd.,* 53 Md.App. 656, 456 A.2d 82 (1983), as primary support for their claim that they proved reliance damages. *Wartzman,* however, involves a significantly different fact situation. The investors were prevented from selling stock because their retained attorney failed to comply with prerequisites for registering the stock. The reason for the venture's failure in *Wartzman* is obvious and causation is established. In the present case causation is not established.

fell behind in rent payments, CDC allowed them to remain in the building.

---

In its memorandum the trial court questioned whether Nguyen and Akins had standing to sue on behalf of the corporation. The court did not rule on this issue, and because our other holdings are dispositive, we do not directly address it. We do note, however, that there is some authority for the position that when a wrong is done both to an individual and to the corporation, the individual can assert a cause of action without regard to the corporation's duplicate right to sue. Personal losses could have been held to constitute an individual wrong. *See Buschmann v. Professional Men's Association*, 405 F.2d 659, 662 (7th Cir.1969) (citations omitted); *see also Dann v. Studebaker-Packard Corporation*, 288 F.2d 201, 211 (6th Cir.1961 (citations omitted).

### DECISION

Affirmed.