[No. 12919-1-II.   Division Two.   April 27, 1992.]

DOROTHY MARIE WALKER, *Appellant,* v. TRANSAMERICA TITLE INSURANCE CO., INC., *Respondent.*

*Douglas O. Whitlock* and *Whitlock, Potter & Saunders,* for appellant.

*Charles E. Gallup* and *Schwabe, Williamson & Wyatt,* for respondent.

MORGAN, J. — Dorothy Walker appeals a summary judgment dismissing her two causes of action against Transamerica Title Insurance Co. We reverse and remand.

In December 1981, Walker loaned $40,000 to Duane and Pamela Kirk.[1] To secure repayment by the Kirks, she was to

---

[1]The record is scant. It consists of one hearsay affidavit from Transamerica's counsel, various factual representations orally agreed upon by both parties in open court during the summary judgment hearing, and "findings" (*i.e.,* stipulated facts) signed by the parties after the trial judge had ruled. We have compiled the following factual scenario by using all of those sources. The hearsay affidavit is

receive a second deed of trust on the property in which they resided. The first deed of trust was held by Washington Mutual Savings Bank, to whom the Kirks owed about $85,000 at the time of their transaction with Walker.

When Walker's second deed of trust was prepared, it recited that a legal description was attached. However, none was, and the deed was recorded without a legal description.

The original preparer of the deed was Mortgage Connections, Inc., an entity that had arranged the loan transaction between Walker and the Kirks.[2] Mortgage Connections forwarded the deed to an escrow agent, and the escrow agent forwarded it to Transamerica, from whom Walker had purchased title insurance. Transamerica recorded the deed, an act that it labels a "courtesy filing".

The Kirks defaulted on their obligation to Walker, and she commenced nonjudicial proceedings to foreclose her interest. Shortly before those proceedings were complete, however, Kirks filed for bankruptcy, which had the effect of staying Walker's foreclosure proceedings. During the pendency of the bankruptcy, the involved parties realized, apparently for the first time, that Walker's deed lacked a legal description. Ultimately, the bankruptcy court apparently ruled that Walker's deed was void and that she had no lien to foreclose against the Kirks' property.[3]

The Kirks also defaulted on their obligation to Washington Mutual, and for a time Walker stepped in to keep the first deed of trust current. She stopped paying on the first lien when the bankruptcy court ruled, apparently in October 1984, that her own lien was invalid. By that time,

---

properly usable because Walker did not object to it until after the trial judge had ruled adversely to her, and the trial judge correctly overruled the objection as untimely. *Smith v. Showalter*, 47 Wn. App. 245, 248, 734 P.2d 928 (1987). The oral representations are usable pursuant to CR 2A. The "findings" reduce to writing some of the facts contained in the hearsay affidavit and the oral representations.

[2]Apparently, Mortgage Connections went bankrupt in 1982.

[3]Neither party has provided copies of the motions or orders from the bankruptcy court. Thus, we cannot tell from the record who brought the matter before the bankruptcy court or the exact nature of that court's ruling.

according to her allegation, she had paid $18,760 to Washington Mutual.

When Walker stopped paying, Washington Mutual commenced nonjudicial proceedings to foreclose its interest. Those proceedings culminated in an auction at which Walker did not bid, and the property was sold to a third party for $95,760. The sale price exceeded the total owed Washington Mutual by about $100.

Walker then filed this suit against Transamerica. In her first cause of action, she alleged that Transamerica had a duty to insure that all documents necessary to protect her interest were recorded properly; that Transamerica acted negligently when it recorded her deed without a legal description; and that Transamerica's negligence proximately caused damage to her in the sum of $60,000 plus interest, costs and attorneys fees. In her second cause of action, she alleged that Transamerica had contracted to insure her title; that her title had been defeated or impaired; and that she was proximately damaged in the amount of $60,000, plus interest, costs and attorneys fees.

A few days before trial, Transamerica moved for summary judgment dismissing both causes of action. It asked the trial court to assume that Walker could prove the elements of her causes of action other than proximate cause. It then argued that she could not prove proximate cause, because her loss, if any, was caused not by lack of a legal description in her second deed of trust, but by "her failure to pay the first deed of trust and/or bid in the foreclosure process to protect her interest." It presented no evidence tending to show whether she could have paid Washington Mutual had she chosen to. Walker orally responded that because she lacked a valid second lien from and after the date on which her deed was recorded without a legal description, she had no duty to pay the first deed of trust by bidding at the foreclosure sale or otherwise. The trial court granted Transamerica's motion.

For purposes of this appeal, the parties assume that Walker can prove duty, breach and damages. Thus, they focus on proximate cause.

■ Proximate cause has two components: legal cause and cause in fact. *Hartley v. State*, 103 Wn.2d 768, 777-78, 698 P.2d 77 (1985). Cause in fact is established if plaintiff's injury would not have occurred but for defendant's breach of duty. *Harbeson v. Parke-Davis, Inc.*, 98 Wn.2d 460, 476, 656 P.2d 483 (1983); W. Keeton, D. Dobbs, R. Keeton & D. Owen, *Prosser and Keeton on Torts* 266 (5th ed. 1984). Cause in fact is not established if plaintiff's injury would have occurred without defendant's breach of duty. *Davis v. Globe Mach. Mfg. Co.*, 102 Wn.2d 68, 74, 684 P.2d 692 (1984); *Prosser and Keeton on Torts*, at 265.

The component in issue is cause in fact. In general terms, Transamerica is arguing that Walker cannot prove that she would not have lost her security "but for" Transamerica's assumed breach. In more specific terms, it is arguing that Walker would have lost her security regardless of Transamerica's assumed breach of duty, because Washington Mutual foreclosed its superior lien when Walker failed to pay at or before its foreclosure sale, and foreclosure of a superior lien extinguishes inferior ones. RCW 61.24.050; *Glidden v. Municipal Auth.*, 111 Wn.2d 341, 347 n.3, 758 P.2d 487 (1988).

■ To prove cause in fact, Walker must prove that she could have paid Washington Mutual's lien at the time of its foreclosure sale, and that she would have done so if at that time she had had a valid lien of her own. Even if her lien had been validly perfected when her deed of trust was recorded, she would still have lost it had she been unable or unwilling to pay Washington Mutual's lien at the time of its foreclosure sale. RCW 61.24.050; *Glidden*, 111 Wn.2d at 347 n.3. Therefore, proof that she could have and would have paid Washington Mutual's lien had her own lien been valid is necessary if a trier of fact is to have evidence from which to reasonably infer that she would not have lost her lien but for Transamerica's negligence.

It does not follow, however, that Walker must prove that she actually paid Washington Mutual, or that she bid at its foreclosure sale. Proximate cause can be an element of the

plaintiff's case in chief, *Davis v. Globe Mach. Mfg. Co.*, 102 Wn.2d at 73; *Harbeson*, 98 Wn.2d at 468; WPI 21.02, an element of the defense of contributory negligence; RCW 4.22.015 ("[l]egal requirements of causal relation apply . . . to contributory fault"); *Young v. Caravan Corp.*, 99 Wn.2d 655, 662, 663 P.2d 834, 672 P.2d 1267 (1983); WPI 11.01, or an element of the defense of mitigation of damages. RCW 4.22.015 ("fault" includes unreasonable failure to mitigate damages; legal requirements of causation apply to fault); WPI 33.01-33.03. Used in either of the first two ways, it relates to conduct occurring *before* a defendant's actionable wrong. Used in the last way, it relates to a plaintiff's conduct occurring *after* a defendant's actionable wrong. *Southport Transit Co. v. Avondale Marine Ways*, 234 F.2d 947, 952 (5th Cir. 1956); D. Dobbs, *Remedies* § 3.7, at 187 (1973); *Prosser and Keeton on Torts,* at 458; J. Stein, *Damages and Recovery* § 127, at 222 (1972).

Here, Transamerica's actionable wrongs, if any, occurred in December 1981.[4] Washington Mutual's foreclosure sale occurred after October 1984.[5] Thus, Walker's failure to pay

---

[4]Walker's tort cause of action accrued, if at all, on December 22, 1981. *Cf. Walker v. Bowman*, 27 Okla. 172, 173-74, 111 P. 319, 320 (1910) (cause of action for negligently abstracting title arises at time of breach, not at time of each item of damage; cites seven older cases from six other states). Her second deed of trust was recorded on that date, according to the county auditor's date stamp, and as of that time the deed was void due to lack of a legal description. *Barth v. Barth*, 19 Wn.2d 543, 556-57, 143 P.2d 542 (1943) (quoting *Martinson v. Cruikshank*, 3 Wn.2d 565, 567, 101 P.2d 604 (1940)); *Sparks v. Douglas Cy.*, 39 Wn. App. 714, 717, 695 P.2d 588 (1985); *Howell v. Inland Empire Paper Co.*, 28 Wn. App. 494, 624 P.2d 739, *review denied*, 95 Wn.2d 1021 (1981).

Walker's contract cause of action accrued, if at all, on or about December 23, 1981. Her title policy took effect on that date, according to schedule A attached thereto, and it was also breached on that date if it was breached at all. When title is defective at the time a title policy takes effect, the policy is breached and the title company becomes immediately liable to the insured, even though the exact amount of legal loss has not been definitely ascertained. *Fifth Mut. Bldg. Soc'y of Manayunk's Appeal*, 317 Pa. 161, 164-65, 176 A. 494, 495 (1935); *Peoples Downtown Nat'l Bank v. Lawyers Title Guar. Fund*, 334 So. 2d 105, 107 (Fla. Dist. Ct. App. 1976); 13A G. Couch, *Insurance* § 48:113 (2d ed. 1982).

[5]The exact date of Washington Mutual's foreclosure sale is not shown in the record. However, it is undisputed that it came after the bankruptcy court's ruling on the validity of the second deed of trust, and that ruling was in October 1984.

Washington Mutual's lien was conduct occurring after the defendant's actionable wrongs, and Transamerica's true argument is as follows: (a) Walker had a duty to mitigate her damages at the time of Washington Mutual's foreclosure sale; (b) she failed to do so; and (c) her failure was the sole proximate cause of the loss of her lien.

■■ Transamerica's argument fails because Walker had no duty to mitigate her damages at the time of Washington Mutual's foreclosure sale. The doctrine of mitigation of damages, also called the doctrine of avoidable consequences, *Young v. Whidbey Island Bd. of Realtors*, 96 Wn.2d 729, 731-32, 683 P.2d 1235 (1982); WPI 33.01, provides that a plaintiff is not entitled to recover damages for any harm that he or she could have avoided by the use of reasonable effort or expenditure after the commission of the wrong.[6] *Snowflake Laundry Co. v. MacDowell*, 52 Wn.2d 662, 674, 328 P.2d 684 (1958); *Hoff v. Lester*, 25 Wn.2d 86, 94, 168 P.2d 409, 164 A.L.R. 751 (1946); *Sutton v. Shufelberger*, 31 Wn. App. 579, 581-82, 643 P.2d 920 (1982); *Tennant v. Lawton*, 26 Wn. App. 701, 703-04, 615 P.2d 1305 (1980); *Kubista v. Romaine*, 87 Wn.2d 62, 67, 549 P.2d 491 (1976). However, a plaintiff has no "duty"[7] to mitigate when the defendant

---

[6]The doctrine of mitigation of damages applies in both tort and contract cases. *Compare* Restatement (Second) of Torts § 918 (1979) *with* Restatement (Second) of Contracts § 350 (1981); *see also, e.g., Young v. Whidbey Island Bd. of Realtors*, 96 Wn.2d at 732 (tort and contract); RCW 4.22.005-.015 (tort); *Snowflake Laundry Co. v. MacDowell*, 52 Wn.2d 662, 674, 328 P.2d 684 (1958) (contract); *Sutton v. Shufelberger*, 31 Wn. App. 579, 581-82, 643 P.2d 920 (1982) (tort); *Kubista v. Romaine*, 87 Wn.2d 62, 67, 549 P.2d 491 (1976) (tort); *Bill C. Harris Constr. Co. v. Powers*, 554 S.W.2d 332 (Ark. 1977); D. Dobbs, *Remedies* § 3.7, at 187 (1973).

[7]Technically, it is inaccurate to say that an injured party has a "duty" to take reasonable steps to avoid further damages. "[T]he plaintiff cannot be sued for breach of this supposed 'duty', though he does suffer a reduction of damages if he fails to minimize his damages." D. Dobbs, *Remedies* § 3.7; 22 Am. Jur. 2d *Damages* § 499 (1965); *see also* RCW 4.22.005; RCW 4.22.015; WPI 33.01; *cf. Seattle-First Nat'l Bank v. Shoreline Concrete Co.*, 91 Wn.2d 230, 238, 588 P.2d 1308 (1978) (similar analysis as to contributory negligence; such negligence may reduce recovery but is not tortious in and of itself). Nevertheless, we will refer to a "duty" to mitigate because doing so provides a convenient way of expressing what Walker was or was not required to do.

has equal opportunity to do so.[8] *Wartzman v. Hightower Prods., Ltd.*, 53 Md. App. 656, 666-67, 456 A.2d 82, 88 (1983); *Shea-S&M Ball v. Massman-Kiewit-Early*, 606 F.2d 1245, 1249 (D.C. Cir. 1979) (quoting *S.J. Groves & Sons Co. v. Warner Co.*, 576 F.2d 524, 530 (3d Cir. 1978)); *Unverzagt v. Young Builders, Inc.*, 252 La. 1091, 1103, 215 So. 2d 823, 828 (1968); *Parker v. Harris Pine Mills, Inc.*, 206 Or. 187, 204-05, 291 P.2d 709, 717 (1955); *Hiss v. Friedberg*, 201 Va. 572, 576-77, 112 S.E.2d 871, 875 (1960); *Alexander v. Brown*, 646 P.2d 692, 695 (Utah 1982); *Schneidt v. Absey Motors, Inc.*, 248 N.W.2d 792, 796-97 (N.D. 1976); 22 Am. Jur. 2d *Damages* § 37 (1965).

> Where both the plaintiff and the defendant have equal opportunity to reduce the damages by the same act or expenditure, and it is equally reasonable to expect the defendant to minimize damages, the defendant will not be heard to say that the plaintiff should have minimized . . .[.]

D. Dobbs, *Remedies* § 3.7, at 186 (1973).

We have found one case, concededly ancient, that applies the principle of equal opportunity to facts like those at bar. In *Security Abstract of Title Co. v. Longacre*, 56 Neb. 469, 76 N.W. 1073 (1898), Longacre ordered an abstract of title on certain property. The abstract showed a first mortgage lien but omitted a second attachment lien due to the abstract company's negligence. The litigation underlying the attachment proceeded to judgment, the property was sold to a third party at an execution sale, and the sale was confirmed. Thereafter, relying on the abstract and lacking knowledge that the property had been sold to satisfy the attachment lien, Longacre bought the property not from the purchaser at the attachment sale, but from the original owner. The purchaser at the attachment sale soon ousted

---

[8]Like the doctrine of mitigation in general, this principle of equal opportunity applies in both tort and contract cases. *Compare* 22 Am. Jur. 2d *Damages* § 500 (tort) *with* 22 Am. Jur. 2d *Damages* § 508 (contract); D. Dobbs, *Remedies* § 3.7; *see also, e.g., Shea-S&M Ball v. Massman-Kiewit-Early*, 606 F.2d 1245, 1249 (D.C. Cir. 1979) (action sounding in both contract and tort); *Wartzman v. Hightower Prods., Ltd.*, 53 Md. App. 656, 666-67, 456 A.2d 82, 88 (1983) (same).

Longacre from possession, and Longacre sued the abstract company for damages. While that suit was pending, the holder of the first mortgage foreclosed. Longacre failed to bid at the mortgage foreclosure sale, and the abstract company set up that failure as a defense to its liability. The court rejected the proposed defense. It said that the possibility that Longacre might have bid successfully and thereby obtained the property "furnished no defense for the abstract company"; that if he had acquired the property at that sale, he would have acquired it "in an independent transaction"; and that "any benefit which he derived in the matter could not inure to the company, or destroy or discharge, in whole or in part, his cause of action against it." 56 Neb. at 474-75. Essentially, the court was saying that neither Longacre nor the abstract company had any interest in the property at the time of the mortgage foreclosure sale; that each had equal opportunity to bid at the sale; and that neither had any duty to mitigate damages by bidding at the sale.

■ In the present case, Walker and Transamerica had equal opportunity to pay off Washington Mutual's lien, by bidding at its foreclosure sale or otherwise. Because Walker's deed contained no legal description, the lien it was meant to create was void.[9] *See Barth v. Barth*, 19 Wn.2d 543, 556-57, 143 P.2d 542 (1943) (quoting *Martinson v. Cruikshank*, 3 Wn.2d 565, 567, 101 P.2d 604 (1940)); *Sparks v. Douglas Cy.*, 39 Wn. App. 714, 717, 695 P.2d 588 (1985); *Howell v. Inland Empire Paper Co.*, 28 Wn. App. 494, 624

---

[9] In making this ruling, we ignore the bankruptcy court's ruling that Walker's deed was void as against the trustee in bankruptcy. That ruling cannot have evidential effect, because the effect of a deed that lacks a legal description is a question of law and questions of law do not turn on evidence. Nor can that ruling have conclusive effect, for neither party has invoked res judicata or collateral estoppel, and neither has even included a copy of the bankruptcy court's order in the record of the court.

In making this ruling, we also distinguish RCW 65.08.070. On appeal for the first time, Transamerica argues that that statute governs the effect of Walker's second of trust. By its terms, however, the statute describes the effect of an unrecorded deed that is valid on its face. It does not describe the effect of a recorded deed that is invalid on its face.

P.2d 739, *review denied*, 95 Wn.2d 1021 (1981). Thus, neither she nor Transamerica had any interest in the Kirk property at the time Washington Mutual foreclosed its lien, and neither owed the other a duty to mitigate damages.

As the party moving for summary judgment, Transamerica bore the initial burden of showing that Walker did not possess evidence sufficient to support an inference that she could have paid Washington Mutual's first lien at the time it was foreclosed, and would have done so had her own lien then been valid. *Young v. Key Pharmaceuticals, Inc.*, 112 Wn.2d 216, 225, 770 P.2d 182 (1989); *Jacobsen v. State*, 89 Wn.2d 104, 108, 569 P.2d 1152 (1977). Transamerica's evidence showed that Walker did not pay the first lien. However, it had no tendency to establish whether she could have paid, or whether she would have paid if her own lien had been valid at the time. As a result, Transamerica failed to sustain its initial burden of showing that Walker could not prove one of the elements of her case in chief, *see Young*, 112 Wn.2d at 225; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986), and it was not entitled to summary judgment on grounds of proximate cause.

Reversed and remanded for further proceedings.

PETRICH, C.J., and ALEXANDER, J., concur.