Troy A. MOLDE, Appellant,

v.

CITIMORTGAGE, INC., Respondent.

No. A09–796.

Court of Appeals of Minnesota.

April 13, 2010.

Carl E. Christensen, Christensen Law Office PLLC, Minneapolis, MN, for appellant.

Christina M. Weber, Wilford & Geske, P.A., Woodbury, MN, for respondent.

Considered and decided by HUDSON, Presiding Judge; CONNOLLY, Judge; and JOHNSON, Judge.

## OPINION

JOHNSON, Judge.

An attorney representing CitiMortgage, Inc., conducted a foreclosure by advertisement pursuant to section 580.05 of the Minnesota Statutes. The home foreclosed upon was sold at a sheriff's auction. After the redemption period lapsed, the former owner of the home, Troy A. Molde, commenced this action to rescind the sale on the ground that the foreclosure documents did not satisfy the requirements of section 580.05. The district court entered summary judgment in favor of CitiMortgage. Molde's primary argument on appeal is that the document evidencing the authority of CitiMortgage's attorney to act on behalf

of CitiMortgage was not recorded in the tract index. We affirm.

## FACTS

In September 2006, Molde borrowed $343,000 from Winstar Mortgage Partners, Inc. To secure the loan, Molde granted Mortgage Electronic Registration Systems, Inc. (MERS), a mortgage interest in his Lakeville residence. The mortgage was recorded in Dakota County in October 2006.

Molde later fell behind in his mortgage payments. In November 2007, MERS assigned the mortgage to CitiMortgage. The assignment was recorded in Dakota County on November 13, 2007. That same day, a document entitled Notice of Pendency of Proceeding and Power of Attorney to Foreclose Mortgage also was recorded in Dakota County. The Notice of Pendency of Proceeding and Power of Attorney to Foreclose Mortgage described CitiMortgage's intent to foreclose Molde's mortgage by advertisement. The Notice of Pendency of Proceeding and Power of Attorney to Foreclose Mortgage was executed by James A. Geske, Esq., on November 9, 2007. Above the signature line is the notation, "Wilford & Geske, P.A. as Attorney in Fact for CitiMortgage, Inc."

Wilford & Geske's authority to foreclose Molde's mortgage on behalf of CitiMortgage derives not from the document that was recorded in November 2007 but from another document, which was executed and recorded in February 2004. On January 8, 2004, Pamela Schmidt, a vice-president of CitiMortgage, executed a document entitled Limited Power of Attorney. In the Limited Power of Attorney, CitiMortgage appointed the Wilford & Geske law firm to be "its true and lawful Attorney" for purposes of executing foreclosure documents on behalf of CitiMortgage. The Limited Power of Attorney was re-corded in Dakota County on February 17, 2004.

In January 2008, CitiMortgage was the highest bidder at the foreclosure sale of Molde's house and, accordingly, purchased the house for $358,839. The Sheriff's Certificate of Sale and Foreclosure Record was promptly recorded in Dakota County. The redemption period lapsed in early July 2008. See Minn.Stat. § 580.23, subd. 1(a) (2008).

In August 2008, Molde commenced this action against CitiMortgage. In his complaint, he requested two forms of relief. First, he sought a declaratory judgment that the foreclosure sale is null and void and that he holds fee title to the residence. This request is based on Molde's allegations that CitiMortgage "cannot locate and, in fact, does not have the original note" and that CitiMortgage did not comply with the requirements of section 580.05. Second, Molde sought to rescind the foreclosure sale, essentially for the same reasons.

The district court's pre-trial order set a discovery deadline of April 2009. In November 2008, Molde filed a motion for summary judgment. He argued, among other things, that the district court should set aside the foreclosure and sheriff's sale on the ground that CitiMortgage did not follow statutory procedures in recording the 2004 Limited Power of Attorney and the 2007 Notice of Pendency of Proceeding and Power of Attorney to Foreclose Mortgage. In December 2008, CitiMortgage filed its own motion for summary judgment. CitiMortgage argued that the foreclosure sale was conducted in accordance with statutory procedures and, thus, is valid. In February 2009, the district court granted CitiMortgage's motion and denied Molde's motion. The district court concluded that CitiMortgage "was entitled to enforce the Mortgage and foreclose the Mortgage" and that the 2004 Limited Pow-

er of Attorney and the 2007 Notice of Pendency of Proceeding and Power of Attorney to Foreclose Mortgage "were signed and recorded in conformity with Minnesota law." Molde appeals.

## ISSUES

I. Did CitiMortgage comply with the requirements of section 580.05 when conducting a foreclosure by advertisement of Molde's residence?

II. Did Molde create a genuine issue of material fact on his allegations that CitiMortgage did not hold the note or that he is entitled to recoupment?

III. Did the district court err by granting CitiMortgage's motion for summary judgment without allowing Molde to conduct additional discovery?

## ANALYSIS

Molde raises three issues, each of which relates to the district court's grant of CitiMortgage's motion for summary judgment. A district court must grant a motion for summary judgment "when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that either party is entitled to a judgment as a matter of law." *Fabio v. Bellomo,* 504 N.W.2d 758, 761 (Minn.1993); *see also* Minn. R. Civ. P. 56.03. A genuine issue of material fact exists if a rational trier of fact, considering the record as a whole, could find for the party against whom summary judgment was granted. *Frieler v. Carlson Mktg. Group, Inc.,* 751 N.W.2d 558, 564 (Minn.2008). We apply a *de novo* standard of review to the district court's decision to grant summary judgment, viewing the evidence in the light most favorable to the non-moving party. *Osborne v. Twin Town Bowl, Inc.,* 749 N.W.2d 367, 371 (Minn.2008).

## I.

Molde first argues that CitiMortgage did not comply, in two respects, with section 580.05. Molde's arguments raise questions of statutory interpretation, to which we apply a *de novo* standard of review. *Goodman v. Best Buy, Inc.,* 777 N.W.2d 755, 758 (Minn.2010).

### A. 2004 Limited Power of Attorney

■ Molde first contends that CitiMortgage did not comply with the statutory requirements of a foreclosure by advertisement because the 2004 Limited Power of Attorney "was not recorded against his property but, rather, as a miscellaneous document in the Dakota County Recorder's Office." He asserts that, because the document was not recorded in the tract index, a reasonable search would not have led to its discovery and, thus, there was no way to know that Wilford & Geske was authorized to commence foreclosure proceedings on behalf of CitiMortgage.

Molde's argument is based on the following statute:

> When an attorney at law is employed to conduct such foreclosure, the authority of the attorney at law shall appear by power of attorney executed and acknowledged by the mortgagee or assignee of the mortgage in the same manner as a conveyance, and recorded prior to the sale in the county where the foreclosure proceedings are had. If such attorney be employed on behalf of such mortgagee or assignee by an attorney in fact, the attorney's authority shall likewise be evidenced by recorded power.

Minn.Stat. § 580.05 (2008). One of the premises of Molde's argument is that the first sentence of section 580.05 requires the 2007 Notice of Pendency of Proceeding and Power of Attorney to Foreclose Mort-

gage to be recorded in the tract index. CitiMortgage agrees with this premise, which appears to flow from caselaw stating that such a document must "describe[ ] the mortgage with reasonable certainty." *Peaslee v. Ridgway*, 82 Minn. 288, 290, 84 N.W. 1024, 1025 (1901).

The next step in Molde's argument is that the same recording requirement also applies to the 2004 Limited Power of Attorney, which is the subject of the second sentence of the statute. He focuses on the word "likewise'" in the second sentence, which he interprets to mean that the 2004 Limited Power of Attorney must be recorded in the same manner as the 2007 Notice of Pendency of Proceeding and Power of Attorney to Foreclose Mortgage. In response, CitiMortgage contends that the word "likewise" means only that the document must be recorded, which it was, not that it must be recorded in the same manner as the document initiating the foreclosure. CitiMortgage also contends that Molde's interpretation would defeat the purpose of documents such as the 2004 Limited Power of Attorney by preventing the general appointment of an attorney-in-fact such as Wilford & Geske and effectively requiring an employee of the company to execute documents every time a foreclosure by advertisement is initiated.

The supreme court has stated, "The objective of all statutory interpretation is 'to give effect to the intention of the legislature in drafting the statute.'" *State v. Thompson*, 754 N.W.2d 352, 355 (Minn. 2008) (quoting *State v. Iverson*, 664 N.W.2d 346, 350 (Minn.2003)). "The principal method of determining the legislature's intent is to rely on the plain meaning of the statute." *Id.* But if a statute is ambiguous, we may ascertain the legislature's intention "by considering, among other matters, contemporaneous legislative history, the object to be attained, the cir-

cumstances under which it was enacted, and the occasion and necessity for the law." *Sprint Spectrum LP v. Commissioner of Revenue*, 676 N.W.2d 656, 664 (Minn.2004) (quotation omitted). The word "likewise" has both meanings identified by the parties. It may mean "[i]n like manner," but it also may mean "[a]lso" or "moreover." *Webster's New International Dictionary* 1432 (2d ed. 1946); *see also* XIII *The Oxford English Dictionary* 950 (2d ed. 1989). Thus, section 580.05 is ambiguous with respect to the issue in dispute in this case. Accordingly, we have reviewed the origins of section 580.05 to ascertain the legislature's intent as to whether a document evidencing the authority of an attorney-in-fact to initiate a foreclosure by advertisement must be recorded in the tract index.

### 1.  *History of Section 580.05*

The language of section 580.05 has been nearly constant since the 1905 codification of Minnesota's statutes, which was known as the Revised Laws of Minnesota. The 1905 codification was the first codification of Minnesota's statutes since 1894 and the first official complete revision since 1866. John Tessner et al., *Minnesota Legal Research Guide*, app. D, at 304–05 (2d ed. 2002). The 1905 codification of the statute now numbered section 580.05 is based on two session laws that were enacted into law after the 1894 codification.

The first session law, enacted in 1897, provides:

> Sale: How Made and by Whom—The sale shall be at public vendue between the hours of nine (9) o'clock in the forenoon and the setting of the sun, in the county in which the premises to be sold, or some point thereof are situated, and shall be made by the sheriff of the said county, or his deputy, to the highest bidder.

*Provided, however,* that before such sale shall be made, the mortgagee or assignee of record, or the attorney in fact of such mortgagee or assignee, whose authority is recorded in the county where the foreclosure proceedings are had, shall authorize the attorney making such foreclosure by an instrument in writing, which shall be executed under seal and acknowledged and recorded in the office of the register of deeds of the county where such foreclosure is made prior to the sale.

1897 Minn. Laws ch. 262, § 1, at 488.

The second session law, enacted in 1899, provides:

Every mortgage foreclosure sale heretofore made under a power of sale, in the usual form contained in a mortgage, duly executed, witnessed, acknowledged and delivered and previously recorded in the proper register of deeds' office, of real property within the limits of this state, is, together with the record of such sale, hereby legalized and made valid and effectual to all intents and purposes as against the objection that the power of attorney or authority in writing authorizing the attorney making such foreclosure sale to foreclose the same and the record thereof previously made in the proper register of deeds' office has no seal, scroll or device thereon opposite the names and signatures of the persons who executed, acknowledged and delivered such power of attorney or instrument in writing.

*Provided,* that such power of attorney or instrument in writing was in other respects properly executed, witnessed, acknowledged and delivered and recorded in the proper register of deeds' office prior to such sale, and such foreclosure sale was in other respects regular and in accordance with the statute then in force.

And, *provided further,* that this act shall not affect or prejudice the rights of any bona fide purchaser, and shall not apply to any action now pending.

1899 Minn. Laws ch. 333, § 1, at 423–24.

The statute resulting from the 1897 and 1899 session laws appeared in the 1905 Revised Laws as follows:

Whenever an attorney at law is employed to conduct such foreclosure, his authority shall appear by power of attorney executed and acknowledged by the mortgagee or assignee of the mortgage in the same manner as a conveyance, and recorded prior to the sale in the county where the foreclosure proceedings are had. If such attorney be employed on behalf of such mortgagee or assignee by an attorney in fact, his authority shall likewise be evidenced by recorded power.

Minn. Rev. Laws § 4461 (1905). The portion of the 1897 session law that addressed the time of day for a foreclosure sale was codified in a separate section of the 1905 Revised Laws. *See* Minn. Rev. Laws § 4462 (1905).

It is apparent that the 1905 codification of the statute now numbered section 580.05 bears only a remote resemblance to the language of the 1897 and 1899 session laws. The 1905 codification reflects the work of a three-person commission appointed by the supreme court in 1901 to "revise, codify and annotate the public statutes of this state." 1901 Minn. Laws ch. 241, § 1, at 383. The commission was charged with

examin[ing] and compar[ing] the existing General Laws in force in this state at the close of the present legislative session, together with the judicial interpretation and construction thereof, and to propose and recommend such revision and codification thereof as shall, in their

opinion, simplify, harmonize and complete said public statutes of this state. *Id.* In January 1905, the commission submitted a "proposed revision of the general statutes" to the legislature in the form of a bound, 458–page book. *Report of the Statute Revision Commission to Accompany its Draft of a Proposed Revision of the General Laws* 3 (1905) (hereinafter *Commission Report*).[1] In its preface to the report, the commission noted that its work was "only a rearrangement of the existing statutes in a more compact and convenient form" and was "a restatement of the existing statute law." *Id.* But the commission also noted that its task was "a very broad one." *Id.* As the commission wrote:

> The work of rearranging and condensing the thousands of pages of statutory matter which have grown out of the needs of the people during nearly forty years necessitates many changes. The compression of the substance of this vast accumulation within manageable limits has required the rewriting of nearly every section. The purpose kept constantly in mind has been to present the existing statutory system with such changes only as seemed necessary to make it more simple, consistent, and effective. In the subjoined comment upon the several chapters we endeavor to call attention to such material alterations as are proposed, all of which we believe to be within the scope here indicated. No one can know so well as ourselves how imperfectly our task has been accomplished. In extenuation of such faults as may be found to exist we beg leave to say that the work has been one of great difficulty. Nothing short of actual experience in such work can disclose more than a bare hint of the perplexities with which we have had to deal.

> . . . .

> It should be distinctly understood that changes in language do not necessarily indicate an intention to change the meaning of the law. Superfluities and contradictions could not be eliminated without changes in the forms of expression. It is a well-settled rule of statutory construction that in the revision of statutes neither an alteration in phraseology, nor the omission or addition of words, in the latter statute, shall be held necessarily to alter the construction of the former act.

*Id.* at 3–4, 5–6 (quotation and citations omitted).

An enacting clause was printed in the front of the commission's report, and the entire report was introduced as a bill in the 1905 legislative session. *Id.* at 4; *see also* H.F. 43 (1905). The bill passed both houses of the legislature with minor amendments on April 13, 1905. *See* State of Minnesota, *Journal of the Senate*, 34th Sess. 1040 (Apr. 13, 1905); State of Minnesota, *Journal of the House*, 34th Sess. 1348 (Apr. 13, 1905). Prior to final passage, the legislature did not amend the language that now constitutes section 580.05. *Compare Commission Report*, *supra*, ch. 86, § 5, at 881–82, *with* Minn. Rev. Laws § 4461. The bill was signed into law by the governor on April 18, 1905.[2]

1. Following the death of one of its original members, the commission that completed work on the 1905 codification consisted of Daniel Fish of Minneapolis, chairman, Thomas J. Knox of Jackson, and Milton R. Tyler of St. Paul. *Commission Report*, *supra*, at 3, 6. Mark B. Dunnell later was appointed by the legislature to perform subsequent editing and annotating of the 1905 codification. 1905 Minn. Laws ch. 218, § 1, at 286.

2. We have been unable to find a session law that reflects the legislature's passage and the governor's approval of H.F. 43. Nonetheless, the governor's approval is sufficiently evidenced by a newspaper article describing the

Since 1905, the statute has been renumbered on three occasions, in 1913, 1923, and 1941. *See* Minn.Stat. § 580.05 (1941); Minn. Gen. Stat. § 9606 (1923); Minn. Gen. Stat. § 8119 (1913). In addition, in 1945, the first word was changed from "Whenever" to "When." *See* Minn.Stat. § 580.05 (1945); *see also* Act of Mar. 8, 1945, Minn. Stat., vol. 1, at *li* (2008) (reproducing "Minnesota Revised Statutes Enactment"). Furthermore, in 1986, gender-specific language was removed. 1986 Minn. Laws ch. 444, § 1, at 775–76; *see also* Minn. Stat., vol. 10, at 596 (1986) (identifying section 580.05 as one affected by gender-reference changes). Otherwise, the language of the statute now numbered section 580.05 has remained constant since the 1905 codification of Minnesota's statutes.

### 2. Recording of Limited Power of Attorney

The foregoing history of section 580.05 sheds light on the question whether a document evidencing the authority of an attorney-in-fact to initiate a foreclosure by advertisement must be recorded in the tract index. As stated above, Molde's argument hinges on the meaning of the word "likewise" in the second sentence of the statute. Molde would have us interpret the second sentence of the statute to mean that a power of attorney must be recorded in the same manner as the notice of foreclosure by advertisement, which is the subject of the first sentence of the statute.

The legislature did not use the word "likewise" in the 1897 and 1899 session laws that were the bases of the 1905 codification of the statute. The word "likewise" appears in the 1905 codification because the word appears in the revising commission's report, which then became the bill that was approved by the legislature and enacted into law. The pre-existing statute, section 6034 of the 1894 codification, did not include the word "likewise" and did not otherwise require that a document evidencing the authority of an attorney-in-fact to initiate a foreclosure by advertisement be recorded in the tract index. *See* Minn. Gen. Stat. § 6034 (1894). The requirement that Molde seeks to impose on CitiMortgage has not been explicitly stated by the legislature. There is no indication that the 1905 legislature gave particular attention to that part of H.F. 43 that contained the language now found in section 580.05. The commission stated that it "endeavor[ed] to call attention to such material alterations as are proposed," *Commission Report, supra*, at 4, but the commission's report did not refer in any way to the differences between the 1897 and 1899 session laws and the 1905 codification of the statute.

Thus, we conclude that the 1905 legislature did not intend to require that a document evidencing the authority of an attorney-in-fact to initiate a foreclosure by advertisement be recorded in the tract index. Accordingly, CitiMortgage was not required to record the 2004 Limited Power of Attorney in the Dakota County tract index.

### B. 2007 Power of Attorney

Molde also contends that the 2007 Notice of Pendency of Proceeding and Power of Attorney to Foreclose Mortgage, which initiated the foreclosure by advertisement, is invalid because it was executed by Wilford & Geske, not by an employee of CitiMortgage. Molde's argument focuses on the first sentence of section 580.05,

---

signing ceremony in detail, including the persons present, the pen used by the governor, and the comments made by the governor upon signing the bill. *Statutes Are Signed,* Minneapolis Trib., Apr. 19, 1905, at 8.

which requires that an attorney-at-law employed to conduct a foreclosure by advertisement "shall appear by power of attorney executed and acknowledged by the mortgagee or assignee of the mortgage." Minn.Stat. § 580.05.

■ CitiMortgage responds by arguing that Wilford & Geske was authorized to execute the 2007 Notice of Pendency of Proceeding and Power of Attorney to Foreclose Mortgage on behalf of CitiMortgage because of the authority it received in the 2004 Limited Power of Attorney. CitiMortgage is correct. "An attorney-in-fact is an agent, one who stands in the shoes of a principal." *Northfield Care Ctr., Inc. v. Anderson*, 707 N.W.2d 731, 737 (Minn.App. 2006); *see also* Minn.Stat. § 523.21 (2008) (describing relationship between attorney-in-fact and principal). Thus, Wilford & Geske's authority to act as CitiMortgage's attorney at law in foreclosure proceedings in 2007 is justified by the authority conferred by the 2004 Limited Power of Attorney.

In sum, the district court did not err by concluding that CitiMortgage complied with the requirements of section 580.05.

## II.

Molde also argues that the district court erred by rejecting three other arguments he asserted in response to CitiMortgage's motion for summary judgment.

■ First, Molde contends that there are genuine issues of material fact as to whether CitiMortgage actually held the note that was secured by the mortgage or whether CitiMortgage was a "holder in due course." This factual allegation is based on two affidavits submitted by Molde that describe Molde's confusion in communicating with CitiMortgage and his alleged uncertainty as to whether CitiMortgage held his note. In response, Citi-

Mortgage presented affidavits stating not only that CitiMortgage holds the note but also that Molde and his counsel were permitted to inspect the original note in the course of discovery. CitiMortgage introduced a copy of the note into the summary judgment record. Molde did not produce evidence specifically rebutting CitiMortgage's evidence. We assume for present purposes that Molde's allegations, if proved, would entitle him to the relief he has pleaded, but his argument fails because there is no genuine issue of material fact.

■ Second, Molde contends that the foreclosure sale should be rescinded because Geske is an officer of MERS. Molde did not properly present this argument to the district court. Thus, we will not consider the argument on appeal. *See Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn.1988) (holding that issue not presented to district court is forfeited).

■ Third, Molde contends that he should be permitted to pursue a "defense of recoupment." Molde did not plead recoupment in his complaint. The theory is inapplicable to this case in light of the relief Molde seeks. In general, recoupment is a common-law doctrine that allows a party defending a claim to assert another claim for damages "growing out of the same transaction" so that "one claim should compensate the other, and that the balance only should be recovered." *Townshend v. Minneapolis Cold–Storage & Freezer Co.*, 46 Minn. 121, 124, 48 N.W. 682, 683 (1891) (quotation omitted); *see also Black's Law Dictionary* 1388 (9th ed. 2009) (defining "recoupment" as "[r]eduction of a plaintiff's damages because of a demand by the defendant arising out of the same transaction"). But Molde did not seek damages in this case, and CitiMortgage did not seek to obtain damages against him by recovering a judgment on

the note. Furthermore, Molde has not established a genuine issue of material fact on any viable theory allowing the recovery of damages. Thus, the district court properly rejected Molde's recoupment argument.

## III.

■ Molde last argues that the district court erred by ruling on CitiMortgage's motion for summary judgment without allowing him to conduct additional discovery. We apply an abuse-of-discretion standard of review to this issue. *Lewis v. St. Cloud State Univ.*, 693 N.W.2d 466, 473 (Minn. App.2005), *review denied* (Minn. June 14, 2005).

A party may serve and file a motion for summary judgment "at any time after the expiration of 20 days from the service of the summons." Minn. R. Civ. P. 56.01. The rules of civil procedure provide a mechanism by which a party opposing a summary judgment motion may request that the district court deny or continue the motion on the ground that the non-moving party should be permitted to conduct additional discovery:

> Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present, by affidavit, facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

Minn. R. Civ. P. 56.06.

■ An affidavit filed pursuant to rule 56.06 "must be specific about the evidence expected, the source of discovery necessary to obtain the evidence, and the reasons for the failure to complete discovery to date." *Alliance for Metro. Stability v. Metropolitan Council*, 671 N.W.2d 905,

919 (Minn.App.2003). When considering a non-moving party's request pursuant to rule 56.06, the district court should consider two primary factors: first, whether the non-moving party is "seeking further discovery in the good faith belief that material facts will be uncovered, or ... merely engaging in a 'fishing expedition,'" and, second, whether the non-moving party has "been diligent in obtaining or seeking discovery" before requesting denial or continuance under rule 56.06. *Rice v. Perl*, 320 N.W.2d 407, 412 (Minn.1982); *see also QBE Ins. Corp. v. Twin Homes of French Ridge Homeowners Ass'n*, 778 N.W.2d 393, 400 (Minn.App.2010).

Molde did not submit an affidavit pursuant to rule 56.06. His failure to submit such an affidavit, by itself, justifies the district court's decision to rule on the motion without granting relief under rule 56.06. *See* Minn. R. Civ. P. 56.06. Molde raised the issue of discovery only in his memorandum in opposition to CitiMortgage's motion, in which he inserted a single paragraph stating that a ruling on the motion was "premature" because he had not yet completed discovery. In that paragraph, he briefly recited the theories he was pursuing and stated in conclusory fashion that he is "entitled to discovery" on those claims. He did not make any specific statements concerning "the evidence expected" to be obtained through additional discovery, "the source of discovery necessary to obtain the evidence," or "the reasons for the failure to complete discovery to date." *Alliance for Metro. Stability*, 671 N.W.2d at 919.

On appeal, Molde notes that the discovery deadline was in April 2009, approximately three months after the hearing on CitiMortgage's motion for summary judgment. But the discovery deadline merely "limits the time" for discovery for the purposes of "expediting the disposition of the

action" so that the pendency of the case does not become "protracted." Minn. R. Civ. P. 16.01(a), (b); 16.02. Nothing in rule 16, rule 56, or any other rule prevents a district court from ruling on a summary judgment motion merely because it is heard before the discovery deadline. Molde also contends that he received CitiMortgage's discovery responses in December 2008 and in February 2009 and that they were inadequate. But those assertions were not presented to the district court and, thus, have been forfeited. *See Thiele*, 425 N.W.2d at 582. It is significant that Molde himself moved for summary judgment one month before CitiMortgage brought its motion. These circumstances suggest that Molde may not be "seeking further discovery in the good faith belief that material facts will be uncovered" but, rather, may be seeking to "merely engag[e] in a 'fishing expedition.'" *Rice*, 320 N.W.2d at 412.

In sum, Molde failed to comply with rule 56.06 by submitting an affidavit describing how additional discovery would allow him to submit additional evidence to the district court in response to CitiMortgage's motion for summary judgment. Thus, the district court did not err by ruling on CitiMortgage's motion for summary judgment without allowing Molde to conduct additional discovery.

## DECISION

CitiMortgage satisfied the requirements of section 580.05 when recording the 2004 Limited Power of Attorney and the 2007 Notice of Pendency of Proceeding and Power of Attorney to Foreclose Mortgage. Molde did not create a genuine issue of material fact on his allegations that CitiMortgage did not hold the note or that he should be permitted to pursue a claim of recoupment. The district court did not err by ruling on CitiMortgage's motion for summary judgment without allowing Molde to conduct additional discovery.

**Affirmed.**