*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1325**

Excel Manufacturing, Inc.,
Appellant,

vs.

Todd Wondrow, et al.,
Respondents.

**Filed April 18, 2016
Affirmed
Randall, Judge**[*]

Winona County District Court
File No. 85-CV-15-502

Patrick W. Michenfelder, Gries Lenhardt Michenfelder Allen, PLLP, St. Michael, Minnesota (for appellant)

Kay Nord Hunt, Keith J. Broady, Lommen Abdo, P.A., Minneapolis, Minnesota (for respondents)

Considered and decided by Rodenberg, Presiding Judge; Hooten, Judge; and Randall, Judge.

_____

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**RANDALL**, Judge

Appellant challenges the district court's summary-judgment dismissal of its lawsuit. We affirm.

## FACTS

Respondents Todd Wondrow and Aaron Krueger are former employees of appellant Excel Manufacturing Inc. (Excel). Excel is a Minnesota business that designs and manufactures horizontal balers for the recycling industry. Excel was founded in 1991 by Bryan Fisher. Fisher hired Wondrow in 2005 to serve as President of Excel. Wondrow hired Krueger in 2005 to serve as the company's sales manager. Fisher died in 2010, and his son, Andrew Archer, became the new owner and CEO of Excel. Archer fired Wondrow in June 2010. Krueger resigned from Excel in March 2011. Shortly after Wondrow left Excel, respondent Maren Engineering Corp. (Maren) hired him to serve as its president. Maren is an Illinois company that also designs and manufactures horizontal balers for the recycling industry. Maren later hired Krueger to serve as its director of sales and marketing.

In January 2012, Maren introduced a new baler called the ProPAK60. After learning of the ProPAK60, Excel brought a lawsuit against Maren, Wondrow, and Krueger, alleging that the ProPAK60 was virtually identical to Excel's EX63 baler and that Maren relied on Excel's trade secrets and other confidential information provided by Wondrow and Krueger to develop the ProPAK60. The district court dismissed the lawsuit without prejudice in September 2012.

Excel served a second complaint on Maren, Wondrow, and Krueger on January 30, 2015. Excel's complaint alleged that during the course of employment at Excel,

> Wondrow and Krueger's duties and responsibilities required them to be exposed to and gain knowledge of [Excel's] confidential, proprietary and trade secret business information including, but not necessarily limited to, books, records, notes and other information relative to customers, their needs and the products used by them; customer lists, supplier lists and distributor lists; product sales and other performance information; business policies; financial information, sales forecasts, accounts payable and receivable; engineering prints, product specifications, pricing information, marketing plans, customer orders, models, product manuals, equipment, bills of materials, nesting information, and business and manufacturing methods and processes.

Excel alleged that Wondrow and Krueger were exposed to, and gained knowledge of "the EX62/63 design prints, product specifications, pricing information, marketing plans and potential customers, product manuals, manufacturing methods and processes, supplier lists and distributor lists, product performance information, bills of materials, and nesting information." Excel stated that it put measures in place to protect its "confidential, proprietary and trade secret information," including

> allowing access to such information only on a need-to-know basis, requiring employees to sign confidentiality agreements, requiring employees to use a unique user name and password to access information maintained on [Excel's] computers and servers, keeping documents in locked offices and in locked cabinets, and keeping documents in a safe-deposit box at Eastwood Bank in St. Charles, Minnesota.

In its complaint, Excel further alleged that after Wondrow and Krueger departed, Excel discovered that employment agreements and confidentiality agreements they had signed were missing from their personnel files. Excel asserted that "[u]pon information

3

and belief, those documents have been removed from Wondrow's and Krueger's personnel files by Wondrow and/or Krueger or at their direction."

Excel asserted that Maren's ProPAK60 is "virtually identical to [Excel's] EX63 baler." Excel alleged that Maren "could not have independently designed and manufactured a horizontal two ram closed-door baler with such uncanny similarities to the EX62/63 in such a short amount of time without the benefit of [Excel's] confidential, proprietary and trade secret information relative to the EX62/63." Lastly, Excel's complaint alleged that, "[b]ased upon the foregoing, the ProPAK60 was engineered and manufactured based on confidential information and trade secrets stolen by Wondrow and Krueger from Excel Manufacturing."

Based on these facts, Excel alleged misappropriation of trade secrets under the Minnesota Uniform Trade Secrets Act (MUTSA), misappropriation of confidential information, conversion, breach of the employment agreements, breach of the confidentiality agreements, tortious interference with contract, unfair competition, unjust enrichment, and civil conspiracy.

In their joint answer, respondents stated that Excel's baler "has not undergone a substantial modification or change since the mid-1990s; that the Excel baler and how it operates is generally known in the marketplace, is readily ascertainable, there are no patents for the Excel baler and the information is not novel; that since the mid-1990s substantial advances have been made in the design, manufacture and operation of balers; [and] that the Excel baler has become out of date." Respondents further stated that "any alleged secrets or confidential information of the Excel baler are generally known and readily

4

ascertainable from a cursory inspection of the Excel baler." Respondents attached a printout of Excel's web page, which provided photographs and general specifications for Excel's baler model EX62 and model EX63.

Respondents moved to dismiss on the grounds that the complaint failed to state a claim upon which relief could be granted. Respondents also moved, in the alternative, for summary judgment. Respondents submitted affidavits from Wondrow, Krueger, and Miranda Muller, a former Excel human resources employee. In his affidavit, Wondrow stated that he and Fisher were personal friends and that "[n]either Bryan Fisher nor anyone at Excel ever asked me to sign any employment agreement or [confidentiality] agreement and I do not recall ever signing such agreements." Krueger stated that Wondrow hired him and that "[n]either Todd Wondrow nor anyone at Excel ever asked me to sign any employment agreement or [confidentiality] agreement and I never signed such agreements." Muller stated that Excel's employee personnel files were kept in her office and she did "not recall seeing an employment contract or confidentiality agreement signed by Todd Wondrow or by Aaron Krueger." Excel submitted an affidavit from Archer in which he repeated verbatim many of the allegations contained in Excel's complaint.

The district court treated respondents' motion as a motion for summary judgment. The district court granted summary judgment and dismissed all of Excel's claims with prejudice. Excel appeals.

5

**D E C I S I O N**

**I.**

Excel argues that the district court erred by converting respondents' motion to dismiss under rule 12 into a summary-judgment motion under rule 56. Under the rules of civil procedure,

> [i]f, on a motion asserting the defense that the pleading fails to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

Minn. R. Civ. P. 12.02. We review a district court's compliance with rule 12.02 de novo. *See Shamrock Dev., Inc. v. Smith*, 754 N.W.2d 377, 382 (Minn. 2008) (stating that appellate courts "review the construction and application of the Minnesota Rules of Civil Procedure de novo").

Excel argues that "the district court improperly applied a Rule 56 analysis and dismissed [its] claims before any discovery could be conducted," and "[b]ecause Excel was not permitted to conduct any discovery, it was not permitted a 'reasonable opportunity to present all relevant materials' and therefore should . . . have been judged by rule 12 standards." But respondents put Excel on notice that they were seeking summary judgment in the alternative, and both parties submitted affidavits.

Minn. R. Civ. P. 56.06 states:

> Should it appear from the affidavits of a party opposing the [summary-judgment] motion that the party cannot for reasons stated present, by affidavit, facts essential to justify the party's

6

> opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

"An affidavit filed pursuant to rule 56.06 must be specific about the evidence expected, the source of discovery necessary to obtain the evidence, and the reasons for the failure to complete discovery to date." *Molde v. CitiMortgage, Inc.*, 781 N.W.2d 36, 45 (Minn. App. 2010) (quotation omitted). When determining whether to grant a continuance to allow discovery prior to a determination of a summary-judgment motion, "the court considers first, whether the moving party has been diligent in obtaining or seeking discovery and, second, whether the moving party seeks further discovery with the good faith belief that material facts will be uncovered, or is merely engaging in a fishing expedition." *Cargill Inc. v. Jorgenson Farms*, 719 N.W.2d 226, 231 (Minn. App. 2006) (quotation omitted).

Even though Excel knew respondents were seeking summary judgment, and both parties submitted matters outside the pleadings, Excel did not seek a continuance and did not submit an affidavit providing reasons why it could not present facts essential to justify its opposition to summary judgment. *See Molde*, 781 N.W.2d at 45 (stating that "failure to submit . . . an affidavit [under rule 56.06], by itself, justifies the district court's decision to rule on the motion without granting relief under rule 56.06"). Moreover, on appeal Excel does not identify what facts it believes it could have uncovered that would have been pertinent to the summary-judgment determination. In sum, Excel has not demonstrated that the district court erred. The district court properly treated respondents' motion as a motion for summary judgment.

**II.**

Excel argues that the district court should not have granted summary judgment. "A motion for summary judgment shall be granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that either party is entitled to a judgment as a matter of law." *Fabio v. Bellomo*, 504 N.W.2d 758, 761 (Minn. 1993). "[Appellate courts] review a district court's summary judgment decision de novo. In doing so, [they] determine whether the district court properly applied the law and whether there are genuine issues of material fact that preclude summary judgment." *Riverview Muir Doran, LLC v. JADT Dev. Grp., LLC*, 790 N.W.2d 167, 170 (Minn. 2010) (citation omitted). "On appeal, the reviewing court must view the evidence in the light most favorable to the party against whom judgment was granted." *Fabio*, 504 N.W.2d at 761. There is no genuine issue of material fact for trial "when the nonmoving party presents evidence which merely creates a metaphysical doubt as to a factual issue and which is not sufficiently probative with respect to an essential element of the nonmoving party's case to permit reasonable persons to draw different conclusions." *DLH, Inc. v. Russ*, 566 N.W.2d 60, 71 (Minn.1997). "[T]he party resisting summary judgment must do more than rest on mere averments." *Id*.

*MUTSA*

MUTSA prohibits the improper acquisition, use or disclosure of trade secrets. Minn. Stat. §§ 325C.01, subd. 3, .02-.03 (2014). Respondents argue that summary judgment was appropriate because Excel failed to establish the existence of a trade secret.

8

> "Trade secret" means information, including a formula, pattern, compilation, program, device, method, technique, or process, that:
> (i) derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use, and
> (ii) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Minn. Stat. § 325C.01, subd. 5 (2014).

Excel presented a laundry list of items related to the EX63, such as the design prints, product specifications, pricing information, marketing plans and potential customers. Excel also alleged that Maren's ProPAK60 was "virtually identical" to the EX63. But Excel never specified exactly which items were trade secrets or how any such items constituted trade secrets under the statute. General categories of information are not sufficiently specific to qualify as trade secrets under the statute. *See Electro-Craft Corp. v. Controlled Motion, Inc.*, 332 N.W.2d 890, 898 (Minn. 1983) (concluding that district court findings of "trade secrets in the general 'design procedures' for [a] brushless motor" lacked sufficient specificity and that "[t]his lack of clarity is fatal to [plaintiff's] claim"); *see also Luigino's, Inc. v. Peterson*, 317 F.3d 909, 912 (8th Cir. 2003) (concluding that "research and development information," "financial information," and "income statements and documents reflecting volume and sales margins" were "merely general categories of information, insufficiently specific to qualify as trade secrets"). Excel presented only general categories of information, which do not qualify as trade secrets.

Moreover, to constitute a trade secret, information must "not be generally known or readily ascertainable." *Electro-Craft Corp.*, 332 N.W.2d at 898. Respondents submitted

9

evidence that the EX63 product specifications were online and generally available. Excel did not present any evidence to create a genuine issue of material fact on this issue. *See DLH, Inc.,* 566 N.W.2d at 71 ("[T]he party resisting summary judgment must do more than rest on mere averments."). Summary judgment on this claim was appropriate.[1]

*Breach of Employment and Confidentiality Agreements*

Excel stated in its complaint that, after Wondrow and Krueger left the company, their personnel files did not contain employment and confidentiality agreements, and that "[u]pon information and belief, those documents have been removed from Wondrow's and Krueger's personnel files by Wondrow and/or Krueger or at their direction." In support of their motion to dismiss, respondents submitted affidavits from Wondrow and Krueger stating that they did not sign employment or confidentiality agreements. Excel did not submit any evidence to dispute Wondrow's and Krueger's statements to create a genuine issue of material fact on these claims. "To forestall summary judgment, the nonmoving party must do more than rely on unverified or conclusionary allegations in the pleadings or postulate evidence which might be produced at trial." *W.J.L. v. Bugge*, 573 N.W.2d 677, 680 (Minn. 1998) (quotation omitted). Excel failed to present more than the

---

[1] Respondents also argue that summary judgment on Excel's MUTSA claim was proper because it was time-barred. Minn. Stat. § 325C.06 (2014), states: "An action for misappropriation must be brought within three years after the misappropriation is discovered or by the exercise of reasonable diligence should have been discovered." Excel presented an affidavit from Archer, who stated that he "did not become aware of the manufacture and sale of the ProPAK60 until after January 2012." Because Archer's affidavit creates a genuine issue of material fact as to whether Excel's MUTSA claim is time-barred, we do not affirm summary judgment on the MUTSA claim on this basis.

conclusory allegations in its complaint. Summary judgment was appropriate on the breach-of-contract claims.

*Tortious Interference With Contract*

"A cause of action for wrongful interference with a contractual relationship requires: (1) the existence of a contract; (2) the alleged wrongdoer's knowledge of the contract; (3) intentional procurement of its breach; (4) without justification; and (5) damages." *Kjesbo v. Ricks*, 517 N.W.2d 585, 588 (Minn. 1994) (quotation omitted). Excel alleged that Maren interfered with Wondrow's and Krueger's employment and confidentiality agreements. Because Excel did not present evidence sufficient to establish an issue of fact as to whether those contracts existed, summary judgment was appropriate on this claim.

*Misappropriation of Confidential Information, Conversion, Unfair Competition, Unjust Enrichment, and Civil Conspiracy*

Excel failed to present sufficient evidence to establish a genuine issue of material fact with respect to these claims. In his affidavit, Krueger stated: "During my employment with Excel and Maren, my responsibilities were always in sales and never included any work on the design or manufacture of balers." Wondrow stated in his affidavit: "Neither I nor anyone else on the team [at Maren] used any confidential, proprietary or trade secret information from Excel or any other baler manufacturer in the design and manufacture of the ProPAK60." In response, Archer's affidavit merely restated the allegations from the complaint and added:

> Based on my years of experience in the baler industry,
> including but not limited to the engineering and manufacturing
> of industrial balers as well as the circumstances described
> herein, I believe the ProPAK60 was engineered and

11

> manufactured based on confidential information and trade secrets misappropriated by Wondrow, Krueger, and [Maren] from [Excel].

Archer's statements amount to unverified and conclusory allegations. See *W.J.L.*, 573 N.W.2d at 680. Moreover, "affidavits [must] be based on personal knowledge." *City of Faribault v. One 1976 Buick LeSabre,* 408 N.W.2d 584, 586 (Minn. App. 1987); *see also* Minn. R. Civ. P. 56.05 ("Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."). Archer does not claim personal knowledge as to what information Wondrow and Krueger had access to when they worked at Excel, whether Wondrow or Krueger took confidential information with them when they left Excel, or whether they or anyone else used Excel's confidential information to engineer and manufacture the ProPAK60. The allegations contained in Archer's affidavit amount to speculation. "[M]ere speculation, without some concrete evidence, is not enough to avoid summary judgment." *Osborne v. Twin Town Bowl, Inc.*, 749 N.W.2d 367, 371 (Minn. 2008) (quotation omitted). Again, summary judgment on these issues was appropriate.

**Affirmed.**